798 P.2d 371

### In re Kenneth Johnston LINCOLN, a Member of the State Bar of Arizona, Respondent.

No. SB-89-0067-D.

Disc. Comm. No. 87-1142.

Supreme Court of Arizona,
En Banc.

Sept. 18, 1990.

Kenneth Johnston Lincoln, Scottsdale, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, Yigael M. Cohen, Staff Bar Counsel, Phoenix.

## OPINION

CORCORAN, Justice.

The Disciplinary Commission of the Supreme Court of Arizona (Commission) recommends that Kenneth Johnston Lincoln (respondent) be suspended from the practice of law for 9 months. Because respondent failed to appeal from the Commission's recommendation, this matter was submitted for review on the record. *See* rule 53(e), Rules of the Arizona Supreme

Court. We have jurisdiction pursuant to Ariz. Const. art. 3.

### Facts and Procedural Background

On July 29, 1988, the State Bar filed a formal complaint against respondent, charging him with violating the Rules of Professional Conduct, contained in rule 42, Rules of the Arizona Supreme Court. In Count I, respondent was charged with abandoning his representation of his clients, Judith and Jerold Bender, who had retained him to defend them in a lawsuit involving a business lease and with refusing to communicate with them, in violation of Ethical Rules 1.3 and 1.4. Count II alleged that respondent had failed to advise the Benders that their deposition had been noticed, in violation of ER 1.4. Count III alleged that respondent had failed to cooperate with the State Bar's disciplinary investigation by failing to file a timely response to the charges in Counts I and II, in violation of ER 8.1(b) and rule 51(h) and (i).

On August 29, 1988, respondent was personally served with the complaint. When he failed to timely answer, the State Bar requested that the hearing committee deem the complaint admitted, pursuant to rule 53(c)(1). On September 30, 1988, the Commission received respondent's letter contending that his clients were "unmitigated liars," alleging they had discharged his services, and detailing various health problems that he and his family were experiencing. The letter was subsequently ruled an untimely answer.

On October 25, 1988, at the time set for the hearing before the committee, respondent appeared and requested that one of the committee members be excused because of a conflict of interest. He also requested a continuance because of ill health. The committee rescheduled the hearing to reconstitute the members of the committee because of the apparent conflict.

After granting several continuances because of health problems in respondent's family, the committee reconvened on February 23, 1989. Respondent did not appear. As a courtesy, the court reporter telephoned him, and respondent advised her he had not opened his mail for more than 4 weeks and had not read the notice of hearing. Although the committee offered respondent a short delay to allow him time to appear, he declined to do so.

Based on the testimony of respondent's client, Judith Bender, and the evidence introduced by bar counsel, the committee issued its report on March 31, 1989. The committee found, by clear and convincing evidence, that respondent had committed the ethical violations alleged in the complaint, and that respondent had previously been suspended from the practice of law as a result of similar complaints against him in 1981. The committee recommended that respondent be suspended from the practice of law for 6 months and one day,[1] and be ordered to pay costs. The committee gave the following reasons for its recommendations:

1. Although respondent may have experienced poor health and personal tragedy during his representation of the complainants, this was not sufficient excuse to prevent him from effectively communicating with his clients and informing them of the status of their lawsuits.

2. The present record contains insufficient justification for respondent's failure to promptly respond to bar counsel's

---

1. Length of suspension determines requirements and procedures for reinstatement. Lawyers suspended for more than 6 months must submit an application for reinstatement after the suspension period expires. Rule 71(d). Reinstatement is granted only when the state bar is "satisfied that the applicant possesses the moral qualifications and the learning in the law required for admission to practice law in this state, and only by a resolution adopted by a majority of the entire board or commission." Rule 71(a).

On the other hand, a lawyer suspended for 6 months or less may, within 60 days after expiration of suspension, file an affidavit in lieu of an application for reinstatement. Rule 71(c). The affidavit alleges that the applicant has fully complied with suspension requirements and paid any required fees and costs. Rule 71(c). If the state bar fails to file a response to the affidavit, "the commission shall be deemed to consent to reinstatement." Rule 71(c).

and the hearing committee's requests for his cooperation in this matter.

3. Respondent's prior discipline history, when reviewed against the background of the present complaint, demonstrates that respondent periodically disregards his professional obligations, the interests of justice and those of his clients.

Respondent did not object to the committee's report. The matter was originally set to be heard before the Commission on July 15, 1989, but upon respondent's request, was postponed until September 16, 1989. Respondent appeared before the Commission and disputed the committee's findings and recommendation, although he admitted he did not file a timely answer to the complaint and admitted his prior discipline.

On October 24, 1989, the Commission filed its report, unanimously adopting the findings and conclusions of the committee, but recommending by a vote of 6–2 that respondent be suspended for a period of 9 months rather than 6 months and one day, as the committee had recommended. In determining that a longer suspension was warranted, the Commission considered the following 3 aggravating factors: (1) respondent's history of prior disciplinary offenses presented similar instances of misconduct; (2) respondent's substantial experience in the practice of law, having practiced in Arizona since 1966; and (3) respondent's failure to cooperate with the State Bar's investigation indicated a failure to appreciate the significance of his actions, as well as a general disregard for matters of professional responsibility. One minority vote favored filing a disability petition because of evidence that respondent may be suffering from mental illness; the other minority vote favored disbarment because of respondent's apparent recidivist behavior in neglecting clients.

When respondent failed to appeal from the Commission's report, this matter was submitted to this court on the record pursuant to rule 53(e).

### Discussion

### 1. Standard of Review

In disciplinary proceedings, this court acts as an independent "trier of both

fact and law in the exercise of our supervisory responsibility over the State Bar." *In re Neville*, 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). We do, however, give deference and serious consideration to the reports of the committee and Commission. *In re Pappas*, 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988). In this case, respondent consented to the discipline imposed by filing no objections to the Commission's recommendation. *See* rule 53(c)(5). However, before we impose discipline, we must be persuaded by clear and convincing evidence that respondent committed the alleged violations. Rule 54(c); *Pappas*, 159 Ariz. at 518, 768 P.2d at 1163.

### 2. Respondent's Violations

We agree with both the committee and the Commission that the record before us establishes by clear and convincing evidence that respondent committed the violations charged in the complaint. The Benders retained respondent in July 1986 to defend them in a civil lawsuit. After October 1986, he did not contact them, respond to their letters, or return their phone calls. They had to hire another attorney and pay another retainer to resolve the matter that respondent neglected. This was a clear violation of the duties to act with reasonable diligence and promptness in representing a client, ER 1.3, and to keep a client reasonably informed about the status of a matter and comply with reasonable requests for information, ER 1.4, alleged in Count I of the complaint.

The record further supports the allegation in Count II that respondent failed to notify the Benders that their deposition had been noticed, in violation of ER 1.4. The record also clearly establishes respondent's repeated failures to cooperate with the State Bar's investigation of the first two counts, a violation of ER 8.1(b) and rule 51(h) and (i), as alleged in Count III of the complaint. We conclude that the allegations in the complaint were supported by clear and convincing evidence.

### 3. Sanctions

Although we give great weight to the recommendations of the committee and

**236**

Commission, this court ultimately is responsible for determining the appropriate sanction. *Neville*, 147 Ariz. at 115, 708 P.2d at 1306. Guiding our decision is the principle that "the purpose of bar discipline is not to punish the lawyer but to deter others and protect the public." *In re Kersting*, 151 Ariz. 171, 179, 726 P.2d 587, 595 (1986). The American Bar Association's *Standards for Imposing Lawyer Sanctions* also aids our decision. *In re Morris*, 164 Ariz. 391, 393, 793 P.2d 544, 546 (1990); *In re Arrick*, 161 Ariz. 16, 22, 775 P.2d 1080, 1086 (1989). The *Standards* provide that a court should consider the following factors in determining the appropriate sanction to impose: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *Standard* 3.0.

■ Here, respondent violated ethical duties owing to both his clients and the bar. His neglect of client matters and disregard of the bar's investigation evidences his extreme indifference to the practice of law. His conduct toward his clients, although not fatal to their defense of a lawsuit, caused them emotional and financial injury. We also recognize the same aggravating factors as did the Commission: respondent's history of disciplinary offenses shows a pattern of similar misconduct; he has more than 20 years' experience in the practice of law; and his failure to cooperate with the bar indicates a lack of remorse or professionalism.

■ We recognize one mitigating factor not mentioned by the Commission but acknowledged by the committee. The record indicates that respondent experienced "poor health and personal tragedy" during his representation of these clients and the disciplinary proceedings. He requested continuances when his mother was hospitalized and diagnosed as having cancer, and again when she died and he was making funeral arrangements. His letter to the Commission indicated his father's poor health, the recent death of a close friend, and his own health history of suffering 4 cardio-pulmonary seizures over a 26-month period. As compassionate as we may be, however, for this unfortunate series of personal crises, we do not believe this factor justifies respondent's blatant and repeated breaches of his duties to his clients and the bar. He should have communicated with his clients and the bar despite his personal circumstances.

■ After considering all of the above, we believe suspension is an appropriate sanction where, as here, a lawyer knowingly fails to perform services for a client or engages in a pattern of neglect that causes potential injury to that client. *See Standard* 4.42. We also agree with the Commission's recommendation to increase the suspension to a period of 9 months, in light of the aggravating factors apparent on this record. *See Standard* 9.2.

*Disposition*

We agree with the Commission's recommendation. Respondent is suspended from the practice of law for a period of 9 months. Respondent is also ordered to pay the State Bar the amount of $1,752.00 for the costs of these proceedings.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.