813 P.2d 724

**In the Matter of a Member of the State Bar of Arizona, H. Louis HISER, Respondent.**

**No. SB–90–0065–D. Disciplinary Commission Nos. 5–0168, 5–1313.**

Supreme Court of Arizona, En Banc.

June 20, 1991.

H. Louis Hiser, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, Phoenix, Tony S. Cullum, Staff Bar Counsel, Flagstaff, for State Bar.

## OPINION

CAMERON, Justice.

### I. JURISDICTION

The Disciplinary Commission of the Supreme Court of Arizona (Commission) recommends that respondent, H. Louis Hiser, be suspended from the practice of law for six months and one day and ordered to pay costs of $993.19 to the State Bar of Arizona (Bar). We have jurisdiction pursuant to 17A A.R.S. Sup.Ct. Rules, rule 53(e).

### II. PROCEDURAL HISTORY

The Bar filed a complaint against respondent on 4 May 1987, charging him with violating 17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, rule 42, in particular, ER 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 3.1 (Meritorious Claims), 4.1 (Truthfulness in Statements to Others) and 5.1 (Responsibility of Supervising Attorney).

Respondent was initially charged with three counts of ethical violations. Count I was dismissed by the Commission on 20 January 1989. Counts II and III were deemed admitted by respondent's failure to answer. *See* 17A A.R.S. Sup.Ct. Rules, rule 53(c)(1).

The Hearing Committee (Committee) found that respondent violated the Rules of Professional Conduct noted above. The Committee filed its findings and recommendations with the Commission. The Commission noted that the Committee had relied upon the Rules of Professional Conduct that had been adopted by this court effective 1 February 1985. Because the conduct in question occurred prior to February 1985, the Code of Professional Responsibility, Sup.Ct. Rules, rule 29(a) (deleted 1985), and not the Rules of Professional Conduct should have been applied.

The Commission then remanded the matter back to the Committee to consider the violations in light of the Code of Professional Responsibility. The Committee, after considering the facts, found that respondent violated the Code of Professional Responsibility, in particular, DR 1–102 (Misconduct), DR 6–101 (Failing to Act Competently), and DR 7–102 (Representing a Client Zealously). The Committee filed its revised report with the Commission. The Commission adopted the Committee's findings of fact, conclusions of law, and recommendation of suspension for six months and one day.

Although respondent did not answer the complaint or appear at any of the Committee or Commission hearings, he did file an objection to the Committee's recommendation of suspension. Respondent stated:

[The suspension is] excessive and not equitable in comparison to other punish-

ments meted out by the Commission and the Court in similar circumstances.

It would appear that respondent is being punished primarily for not having appeared before the Disciplinary Hearing Committee and not in actual fact for having permitted the facts of the original complaint to be deemed admitted without having made an appearance.

\* \* \* \* \* \*

The punishment recommended by the Committee amounts to a forfeiture of one-half of ones annual income along with all the problems inherent in closing down and re-opening a practice.

Respondent also complained that Bar counsel had entered into an arrangement allowing him to plead guilty to the complaint, accept a judgment of censure, and reimburse the complainants.[1]

## III. DISCUSSION

### COUNT II

Hydro–Dynamics, Inc. is a textile manufacturing business in Lake Havasu City. Citizens Utilities (Citizens) serves the area with electricity. Early in April 1981, Hydro–Dynamics incurred losses due to a Citizens' electrical power failure, and demanded $20,172.17 in damages. In June 1981, Citizens offered Hydro–Dynamics $3,455.00, which it refused.

On 28 October 1981, the case was accepted by respondent's office. Respondent led Hydro–Dynamics to believe that it could get substantially more than the amount Citizens offered, and that his office would vigorously pursue the case. Respondent supervised the two attorneys assigned to this case.

After numerous phone calls to respondent's office, and assurances that something would get done, Hydro–Dynamics became concerned and contacted Citizens in the Spring of 1983. Citizens informed them that the offer had been withdrawn because the statute of limitations had expired. On 25 May 1983, Hydro–Dynamics wrote respondent and informed him of its conversation with Citizens. Respondent's office stated that the statute of limitations had not run and that something would be done very soon. Hearing nothing as of 4 April 1984, Hydro–Dynamics wrote respondent asking what, if anything, he planned to do. When respondent did not answer, Hydro–Dynamics sent a certified letter asking for a response. Respondent informed Hydro–Dynamics that his firm had filed suit against Citizens. The complaint, which was filed without Hydro–Dynamics knowledge or authorization and appeared to have been hurriedly prepared and filed, had numerous discrepancies and inaccuracies.

Hydro–Dynamics owner, John Robert Meyer, testified that Citizens made two settlement offers, the one for $3,455.00 that Hydro–Dynamics refused, and one for $8,500.00 that respondent rejected without notifying Hydro–Dynamics. The record contains a letter from Hydro–Dynamics indicating their dissatisfaction with respondent's representation and frustration resulting from numerous unsuccessful attempts to contact respondent.

Respondent's representation of his client was well below the standard of attention a client has the right to expect from its attorney. We believe, as to Count II, respondent violated two Disciplinary rules:

DR 1–102 Misconduct.

A lawyer shall not:

(4) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(5) engage in conduct that is prejudicial to the administration of justice.

(6) engage in any other conduct that adversely reflects on his fitness to practice law.

DR 6–101 Failing to Act Competently

A. A lawyer shall not:

---

1. Bar counsel and the respondent did reach an agreement whereby respondent would pay restitution to the complainants and receive only a censure. This agreement was presented to the Bar Discipline Attorney, and was rejected because the appropriate Disciplinary rules were not in the agreement. The agreement was redrafted and sent back to respondent, who refused to sign it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

Respondent accepted this case on 28 October 1981, and as of 12 July 1988, Hydro-Dynamics had not received any compensation for its damages. Respondent neglected a legal matter entrusted to him. This was prejudicial to the interest of his client and to the administration of justice. It also was prejudicial to the client and the administration of justice for respondent to file a suit that the client did not consent to and did not want. He was also guilty of neglect in failing to notify the client of the $8,500.00 settlement offer. The client is entitled to know when there has been a settlement offer, and the lawyer is obligated to pass it on to the client. This type of conduct reflects adversely on all members of the Bar.

Respondent was also charged with violating the following:

DR 7–102 Representing a Client Within the Bounds of the Law

A. In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, ... when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

In order for us to find that respondent violated DR 7–102(A)(1), we must have clear and convincing evidence that he filed suit "merely to harass or maliciously injure" Citizens. *In re Bowen*, 160 Ariz. 558, 560, 774 P.2d 1348, 1350 (1989); *see* 17A A.R.S. Sup.Ct. Rules, rule 54(c). Because the evidence does not show that respondent filed the suit to harass or injure Citizens, we concluded that respondent did not violate DR 7–102(A)(1).

## COUNT III

On 14 August 1983, Ada Lee Nugent died intestate in Kingman, Arizona. The personal representative retained respondent to represent the estate. Respondent

filed a petition in probate and did nothing further.

One of the beneficiaries, C.M. McChesney, and her son, a practicing attorney in Marietta, Georgia, made numerous attempts to contact respondent. Respondent failed to return their calls and generally ignored them. The beneficiary then contacted the court and was informed that no further action had been taken. In November 1984, respondent finally returned the son's phone call and informed him that the estate would be settled by February 1985, and distributed no later than 1 March 1985. At the time of the Commission hearing, 12 July 1988, the matter still had not been closed.

Respondent failed to settle the estate within a reasonable length of time and failed to respond to his client's request for information. Respondent also promised to close the matter shortly and failed to keep this promise. The matter was not complicated. We see no reason why the matter could not have been promptly closed, and respondent offers no reason for this delay. We believe the facts support a finding that respondent failed to act competently, thus violating DR 6–101.

We conclude that clear and convincing evidence supports the charges as to Counts II and III.

## IV. SANCTIONS

■ In disciplinary proceedings, this court is the ultimate trier of fact and law, clear and convincing evidence is the standard of proof, and the State Bar's recommendations are seriously considered. *In re Cardenas*, 164 Ariz. 149, 151, 791 P.2d 1032, 1034 (1990) (citation omitted). The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (Standards) are a "useful tool in determining the proper sanction to [apply]." *Cardenas*, 164 Ariz. at 152, 791 P.2d at 1035.

■ The purpose of disciplining lawyers is to protect the public [2] and the ad-

---

**2.** This is not the model case for "protecting the public." The complaint in Count II was filed

August 1984 and Count III was filed April 1985. Bar counsel did not file its complaint against

ministration of justice. *See Standard* 1.1. The *Standards* provide that when imposing sanctions, the court should consider the following: (a) the duty violated, (b) the lawyer's mental state, (c) the potential or actual injury caused by the lawyer's misconduct, and (d) the existence of aggravating or mitigating factors. *Standard* 3.0; *In re Anderson*, 163 Ariz. 362, 365, 788 P.2d 95, 98 (1990). Respondent was charged with failing to act competently in that he neglected legal matters entrusted to him. This is one of the most important duties owed to a client. *In re Galusha*, 164 Ariz. 503, 504, 794 P.2d 136, 137 (1990). According to *Standard* 4.42 (lack of diligence) suspension is warranted when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

The comments to *Standard* 4.42 suggest that suspension is appropriate in cases in which the lawyer does not communicate with the client. In the Hydro–Dynamics case, respondent did not follow through with pre-settlement negotiations, did not answer letters or return phone calls, and filed a suit containing numerous inaccuracies without the client's consent. As for the probate case, respondent did not return phone calls and failed to respond to the client's inquiries as to the status of the case. We hold that *Standard* 4.42 applies to this case.

Prior disciplinary matters are also considered when determining the form of discipline. *Cardenas*, 164 Ariz. at 152, 791 P.2d at 1035 (1990); *Standard* 9.1. Respondent has been the subject of two previous disciplinary actions. In December 1981 he re-

ceived an informal reprimand, and in January 1987 he was censured. The censure involved failure to communicate with his client, lack of diligence in pursuing a client's case, and a conflict of interest by not withdrawing prior to filing suit against his client. Respondent's prior disciplinary offenses are aggravating factors. We believe the sanction of suspension for six months and one day is appropriate.[3]

### V. DISPOSITION

We order that respondent be suspended for six months and one day and pay costs in the amount of $993.19 to the State Bar.

FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.

GORDON, C.J., recused himself and did not participate in this matter.

respondent until May 1987. The first hearing was 22 July 1988, and because respondent was charged under the wrong Rules, the Commission remanded the matter back to the Committee. One year later, on 12 November 1988, the Committee filed their amended report. The Commission considered the matter and filed their report 29 August 1990. It is hard to imagine how the public is being protected when this case has been pending for close to six years, and

all this time the respondent has been able to practice law.

3. The significance of a suspension in excess of six months is that respondent must apply for reinstatement under rule 72 rather than filing an affidavit alleging compliance with the suspension as rule 71(c) requires in cases of suspension for six months or less. *See* 17A A.R.S. Sup.Ct. Rules, rules 71(c) and 72.