824 P.2d 741

**In the Matter of a Member of the State Bar of Arizona, Aaron Garth NELSON, Respondent.**

No. SB-91-0011-D.

Disc. Comm. Nos. 88-0091, 89-1281 and 89-1282.

Supreme Court of Arizona.

Jan. 21, 1992.

State Bar of Arizona, Harriet L. Turney, Chief Bar Counsel by Yigael M. Cohen, Phoenix, for State Bar of Ariz.

Steven B. Bloxham, Parker, for respondent.

OPINION

CORCORAN, Justice.

On December 7, 1990, the Disciplinary Commission of the Supreme Court of Arizona (Commission) filed a report recommending that Respondent Aaron Garth Nelson be suspended from the practice of law for 9 months and that Respondent be placed on probation for a period of 12 months once the suspension is completed. We have jurisdiction to consider the Commission's recommendation pursuant to rule 53(e), Arizona Rules of the Supreme Court.

*Factual and Procedural Background*

On August 25, 1989, the State Bar of Arizona (State Bar) filed a formal complaint with Hearing Committee 1A (Committee) against Respondent, charging him with one count of violating rules 42 and 51, Arizona Rules of the Supreme Court. The complaint arose out of Respondent's representation of client A[1] in a personal injury matter. The complaint alleged that Respondent (1) failed to file client A's complaint in a timely manner; (2) failed to contact and interview potential witnesses for client A; (3) failed to communicate adequately with client A; and (4) failed to respond to the State Bar's request that he respond in writing to charges filed by client A.

Two months after the first formal complaint was filed, the State Bar filed a second formal complaint with the Committee against Respondent. On February 22, 1990, the State Bar amended this second complaint. The amended complaint charged Respondent with two counts of violating rules 42 and 51, Arizona Rules of the Supreme Court. Count One arose out of Respondent's representation of client B in a criminal appeal, and Count Two arose out of Respondent's representation of client C in a criminal appeal.

Count One alleged that Respondent (1) failed on two separate occasions to file an appellate brief for client B in a timely

---

1. We recognize that clients who seek counsel from lawyers often do so in confidence. We do not believe that such confidences should be breached just because the lawyer involved is being disciplined. We therefore use client A, client B, and client C, instead of the clients' actual names.

manner; (2) failed to appear before the court of appeals, as ordered, to show cause why he should not be held in contempt of court for his failure to file client B's appeal in a timely manner; (3) failed to represent client B adequately; (4) failed to communicate adequately with client B; (5) misrepresented the status of client B's case to him; and (6) failed to respond to the State Bar's request that he respond in writing to allegations relating to Respondent's representation of client B.

Count Two alleged that Respondent (1) failed on 3 separate occasions to file an appellate brief for client C in a timely manner; (2) failed to appear before the court of appeals, as ordered, to show cause why he should not be held in contempt of court for his failure to file client C's appeal in a timely manner; (3) failed to represent client C adequately; and (4) failed to communicate adequately with client C during the course of representing him.

Based on these allegations, Respondent was charged with violating ER 1.3, 1.4(a), 3.4(c), 8.1(b), 8.4(c), and 8.4(d) of rule 42, and rules 51(h) and (i), Arizona Rules of the Supreme Court.

On March 23, 1990, the Committee held a hearing in this matter. Respondent represented himself at the hearing and offered explanations for his conduct in the matters involving clients A, B, and C. In essence, Respondent claimed that his dilatoriness was caused by his alcoholism, inadequate calendaring, and a very heavy caseload. Yigael Cohen represented the State Bar and offered evidence in support of the State Bar's complaints.

At the conclusion of the hearing, the Committee made the following Findings of Fact:

[1.] As to [client A]:

A. That the Respondent undertook the representation of [client A] with respect to a personal injury action arising out of a shooting.

B. That Respondent failed to adequately communicate with [client A] during the course of the handling of his case or to keep the client adequately informed or copied with documents and additional-

ly failed to make appropriate demands upon the Defendant in an attempt to reach a quick and expeditious resolution of the claim in violation of Arizona Supreme Court Rule 42, particularly ER 1.4(a).

C. That Respondent's evaluation and assessment of the claim based upon the client's injuries, the police investigation and report including witness statements, the Defendant's plea of guilty to the criminal assault charges, the lack of insurance (and Respondent's realization that if insurance did exist it would exclude such intentional tort coverage) did not, with the exceptions noted in B above, violate the Rules of Professional Conduct. The Committee also found that [client A] was not prejudiced with respect to the compensation received by him for his damages as a result of Respondent's dilatory work habits.

D. That Respondent failed to respond in writing to the State Bar as requested on 3 separate occasions.

[2.] As to [client B]:

A. That on or about October 11, 1988, Respondent was appointed to represent [client B] on an appeal from a criminal conviction.

B. By Court of Appeals Order dated January 4, 1989, Respondent was advised that [client B's] Opening Brief had to be filed on or before February 1, 1989 and Respondent failed to file said Brief as ordered by the Court.

C. That following Respondent's failure to comply with the previous Court Order of January 4, 1989, the Court of Appeals [issued an Order] dated April 12, 1989 directing that the Respondent file [client B's] Opening Brief on or before May 2, 1989 and further ordered that the Respondent appear before Department D of the Court of Appeals on May 4, 1989 to show cause why Respondent should not be held in contempt of Court if Respondent failed to file the brief as ordered.

D. That Respondent failed both to file the Opening Brief and failed to appear before the Court as ordered.

E. That by Order dated May 9, 1989 the Court found that Respondent had failed to adequately represent [client B] and removed the Respondent as attorney on appeal and was additionally found in contempt of Court. The Court further fined the Respondent $500.00 (which Respondent paid).

F. That the Respondent failed to communicate adequately or truthfully with [client B.]

G. That Respondent failed to [respond to] two separate letters dated August 15, 1989 and September 11, 1989 requesting a response to the allegations relating to the Complaints with respect to [client B.]

[3.] As to [client C]:

A. On or about June, 1988 the Respondent was appointed to represent [client C] on an appeal from a criminal conviction.

B. On or about July 12, 1988 Respondent filed a Motion to Stay Appeal pending a Rule 32 Petition for Post Conviction Relief. That said Petition to stay appeal was inappropriate and was in fact denied by the Court of Appeals on July 27, 1988. That Respondent was advised by the Court of Appeals to file [client C's] Opening Brief within 25 days from August 25, 1988 which Respondent failed to do.

C. The Court of Appeals issued an Order dated January 4, 1989 ordering the Respondent to file the Opening Brief by February 1, 1989 which the Respondent failed to do. Thereafter the Court of Appeals issued another Order dated April 12, 1989 ordering that a brief be filed by May 2, 1989 and that upon failure to do so that the Respondent appear and show cause why he should not be held in contempt of Court. That Respondent failed both to file the Opening Brief and to appear before the Court as ordered.

D. That the Court of Appeals by Order dated May 9, 1989 found that the Respondent failed to adequately represent [client C]; removed the Respondent as the attorney for [client C], found the Respondent in contempt of Court and

ordered him to pay a fine of $500.00 (which amount was paid by Respondent).

E. That Respondent failed to adequately communicate with [client C] during the course of his representation on the appeal.

Based upon its Findings of Fact, the Committee made the following recommendation:

1. That the Respondent be suspended from the practice of law for a period of 9 months to be followed thereafter by a 12–month probationary period for violation of Arizona Supreme Court Rule 42, particularly ER 1.4(a), ER 8.1(b), Rule 51(h) and (i) as to Count One in [the Disciplinary Action arising out of Respondent's representation of client A]; and Arizona Supreme Court Rule 42, particularly ER 1.3, ER 3.4(c), ER 8.4(d), ER 8.1(b) and Rule 51(h) and (i) as to [the Disciplinary Action arising out of Respondent's representation of client B]; Arizona Supreme Court Rule 42, particularly ER 1.3, ER 3.4(c) and ER 1.4(a) as to [the Disciplinary Action arising out of Respondent's representation of client C].

2. That Respondent be assessed all reasonable costs and expenses incurred by The State Bar in connection with this proceeding.

On October 15, 1990, the Commission held a hearing in this matter. Respondent was represented by counsel at this hearing. At the conclusion of the hearing, a 7–member majority of the Commission adopted the Committee's Findings of Fact, and made one additional finding: "The Commission does find mitigating factors exist, in particular, the absence of a dishonest or selfish motive, personal or emotional problems and interim rehabilitation." Notwithstanding these mitigating factors, a 7–member majority of the Commission adopted the Committee's recommendation that Respondent be suspended from the practice of law for 9 months and that, once the suspension is completed, Respondent be placed on probation for a period of 12 months under the following terms:

1. Respondent shall abstain from the use of alcohol.

2. Respondent shall attend a minimum of one meeting of Alcoholics Anonymous per week.

3. Respondent shall be supervised by a "sobriety monitor" who shall be responsible for reporting any breach of sobriety or other probation violations to Chief Bar Counsel or her designate.

4. Respondent shall pay all costs that are or will be due and owing to the State Bar as a result of Respondent's probation prior to termination of probation.

5. Respondent shall comply in all respects with the Rules of Professional Conduct, Rule 42, Ariz.R.S.Ct.

6. In the event that Respondent fails to comply with any of the foregoing conditions and information thereof is received by the State Bar, Bar Counsel shall file with the Hearing Committee a Notice of Non-compliance. The Hearing Committee shall conduct a hearing at the earliest practicable date but in no event later than 30 days after receipt of said notice to determine whether a condition of probation has been breached and, if so, to recommend an appropriate sanction therefor.

7. In the event there is an allegation that any of these terms have been breached, the burden of proof thereof shall be on the State Bar to prove non-compliance by a preponderance of the evidence.

In adopting the Committee's recommendation, the Commission recognized various aggravating and mitigating factors, but concluded that they were "at best, neutral." The Commission therefore "attached great significance" to Respondent's failure to object to the Committee's recommendation in ultimately concluding that the Committee's "recommendation is not unreasonable under all of the facts and circumstances."

A two-member minority of the Commission dissented. The dissent believed that the majority failed to give adequate weight to various mitigating factors, and that a 6-month suspension would be appropriate after giving proper weight to those factors.

## Discussion

### A. Standard of Review

In disciplinary proceedings, this court acts as an independent arbiter of both the facts and the law. *In re Neville,* 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). In acting as arbiter of the facts, we recognize that although we give "serious consideration to the findings ... of the Committee and Commission," *In re Pappas,* 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988), *"we must be persuaded by clear and convincing evidence that [R]espondent committed the alleged violations." In re Lincoln,* 165 Ariz. 233, 235, 798 P.2d 371, 373 (1990) (emphasis added), *citing* rule 54(c); *Pappas,* 159 Ariz. at 518, 768 P.2d at 1163. In acting as arbiter of the law, we give "great weight to the recommendations of the [C]ommittee and the Commission," but recognize that *"this court* ultimately is responsible for determining the appropriate sanction." *Lincoln,* 165 Ariz. at 235–36, 798 P.2d at 373–74 (emphasis added), *citing Neville,* 147 Ariz. at 115, 708 P.2d at 1306.

### B. Respondent's Violations

The record before us establishes by clear and convincing evidence that Respondent did in fact commit the violations found by the Committee and adopted by the Commission. Respondent conceded as much when his counsel made the following statement to the Commission: "First off, [Respondent] does not dispute anything that is in the [Committee] report. These things did occur and there is no excuse for them."

In addition to Respondent's not disputing the Committee's Findings of Fact, independent evidence establishes that Respondent committed the violations found by the Committee and adopted by the Commission. The record includes, *inter alia,* correspondence between Respondent and clients A, B, and C, sworn testimony, and court orders, all of which support the Committee's Findings of Fact. Accordingly, we find by clear and convincing evidence that Respondent committed each and every violation

included in the Committee's Findings of Fact as set forth above.

## C. *Sanctions*

Although Respondent does not dispute the Findings of Fact made by the Committee and adopted by the Commission, he believes that a 6–month suspension, rather than a 9–month suspension, is appropriate in this case.[2] We disagree.

In determining the appropriate sanction, we are guided by the principle that "the purpose of bar discipline is not to punish the lawyer but to deter others and protect the public." *In re Kersting*, 151 Ariz. 171, 179, 726 P.2d 587, 595 (1986). The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) also aids our determination. *In re Morris*, 164 Ariz. 391, 393, 793 P.2d 544, 546 (1990). The *Standards* provide that a court should consider the following factors in determining the appropriate sanction: (1) the duty violated; (2) the lawyer's mental state; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. *Standard* 3.0.

Respondent violated not only ethical duties owed to 3 separate clients, but he also violated ethical duties owed to the legal system. Although we agree with the Commission's finding that Respondent's neglect was not the product of a dishonest or selfish motive, and that Respondent's neglect did not injure client A, his neglect of 3 clients coupled with his disregard of the State Bar's investigations and numerous court of appeals' orders nevertheless warrant suspension. *See Standard* 4.42 ("Suspension is generally appropriate when ... a lawyer engages in a pattern of neglect and causes injury or potential injury to a

client."); 6.22 ("Suspension is appropriate when a lawyer knows that he is violating a court ... rule, and there is ... interference or potential interference with a legal proceeding."); 6.22 ("Suspension is appropriate when a lawyer knows that he is violating a court order ..., and there is injury or potential injury to a client or party, or causes interference or potential interference with a legal proceeding.")

We have also considered all of the aggravating factors and all of the mitigating factors and agree with the Commission that they are, "at best, neutral." Accordingly, we agree with the Commission's recommendation that Respondent should be suspended for 9 months, followed by probation for 12 months.

## *Disposition*

Respondent is suspended from the practice of law for a period of 9 months and, once the suspension is completed, Respondent shall be placed on probation for a period of 12 months under the terms set forth above.[3] Respondent is also ordered to pay the State Bar the amount of $2691.68 for the costs of these proceedings.

FELDMAN, C.J., MOELLER, V.C.J., and FRANK X. GORDON, Jr., J. (Retired), concur.

NOTE: Justice JAMES DUKE CAMERON recused himself and did not participate in the determination of this matter.

---

2. The procedures required for reinstatement are more stringent for lawyers suspended for more than 6 months. For example, lawyers suspended for more than 6 months must submit an application for reinstatement after the suspension period expires. Rule 71(d). Reinstatement is granted only when the State Bar is "satisfied that the applicant possesses the moral qualifications and the learning in the law required for admission to practice law in this state, and only

by a resolution adopted by a majority of the entire board or commission." Rule 71(a).

3. We note that Respondent has urged this court to eliminate the probation term requiring him to attend a minimum of one meeting of Alcoholics Anonymous per week. Although we recognize that this term will inconvenience Respondent, we believe that it is appropriate under all of the facts and circumstances of this matter.