871 P.2d 254

**In the Matter of a Member of the State Bar of Arizona, Steven Todd AUGENSTEIN, Respondent.**

No. SB–92–0065–D.

Supreme Court of Arizona,
En Banc.

March 24, 1994.

Steven Todd Augenstein, in pro. per.

State Bar of Arizona by Yigael M. Cohen, Sr. Bar Counsel, Phoenix, for State Bar of AZ.

## OPINION

CORCORAN, Justice.

On October 16, 1992, the Disciplinary Commission of the Supreme Court of Arizona (Commission) issued its report recommending that Steven Todd Augenstein (respondent) be suspended from the practice of law for 2 years. We have jurisdiction to consider this matter pursuant to rule 53(e), Arizona Rules of the Supreme Court.

*Factual and Procedural Background*

On May 8, 1991, the State Bar of Arizona (State Bar) filed a formal complaint against respondent charging him with 3 counts of violating rules 42 and 51, Arizona Rules of the Supreme Court. The complaint pertained to respondent's representation of 3 different clients.

Count I arose out of respondent's representation of client A[1] in a personal injury action, and alleged that he (1) failed to competently and diligently represent client A by neglecting to have the civil complaint that he filed on the client's behalf served on the defendant; (2) failed to take steps to prevent the client's suit from being dismissed for lack of prosecution; and (3) failed to inform his client that the case had been dismissed. Based on these allegations, respondent was charged with violating Ethical Rules (ERs) 1.1, 1.3, and 1.4 of rule 42, Arizona Rules of the Supreme Court. Additionally, Count I alleged that respondent failed to cooperate with the State Bar's investigation into the matter by not responding to 3 letters requesting information, in violation of ER 8.1 of rule 42, and rules 51(h) and (i), Arizona Rules of the Supreme Court.

Count II arose out of respondent's representation of client B in a personal injury action, and alleged that he (1) failed to diligently represent client B by allowing the client's suit to be dismissed for lack of prosecution, even though he received a minute entry from the court notifying him of the pending dismissal; (2) failed to inform the client that the suit had been dismissed; and (3) failed to communicate with the client, despite requests for information. Based on these allegations, respondent was charged with violating ERs 1.3, 1.4, 3.2, and 8.4. Count II also alleged that respondent failed to cooperate with the State Bar's investigation into the matter by not responding to 2 letters requesting information, in violation of ER 8.1, and rules 51(h) and (i).

Count III arose out of respondent's representation of client C, who retained respondent both to settle the estate of the client's deceased mother and to pursue a wrongful death action on the estate's behalf. Count III alleged that respondent (1) failed to take reasonable steps to close the estate; (2) failed to investigate adequately the wrongful death claim; and (3) failed to respond adequately to the client's requests for information. Based on these allegations, respondent

was charged with violating ERs 1.3, 1.4, and 3.2. Count III further charged respondent with failure to cooperate with the State Bar's investigation into the matter by not responding to 2 letters requesting information, in violation of ER 8.1, and rules 51(h) and (i).

Respondent was personally served with the complaint, but he failed to answer. Thus, the allegations in the complaint were deemed admitted pursuant to rule 53(c)(1), Arizona Rules of the Supreme Court. Copies of both the Order of Complaint Deemed Admitted and the Notice of Right to be Heard were mailed to the address at which respondent had been personally served.

The State Bar Hearing Committee (Committee) convened to consider this matter on July 18, 1991. In its report, which was issued on September 3, 1991, the Committee determined that the allegations deemed admitted by respondent's failure to answer the complaint clearly and convincingly supported a finding of the following violations under rule 42, Arizona Rules of the Supreme Court:

Regarding Count I, respondent's conduct violated ERs 1.1, 1.3, and 1.4;

Regarding Count II, respondent's conduct violated ERs 1.3, 1.4, and 3.2;

Regarding Count III, respondent's conduct violated ERs 1.3, 1.4, and 3.2.

The Committee also found that by failing to respond to and cooperate with the State Bar, respondent violated ER 8.1, and rules 51(h) and (i).

Based on the above findings, the Committee unanimously recommended that respondent be suspended from the practice of law for 6 months and 1 day. In so doing, however, the Committee indicated that it would have unanimously recommended disbarment had it not felt restricted by the proportionality implications of *In re Hiser*, 168 Ariz. 359, 813 P.2d 724 (1991).

On November 16, 1991, the Commission held a hearing in this matter, at which re-

---

1. We recognize that clients who seek counsel from lawyers often do so in confidence. We do not believe that such confidences should be breached just because the lawyer involved is be-ing disciplined. We therefore use client A, client B, and client C instead of the clients' actual names.

spondent made his first appearance in these proceedings. Respondent did not request a mitigation hearing at that time. The Commission, believing that *Hiser* was distinguishable from respondent's case, remanded the matter to the Committee with instructions to reconsider its recommended sanction without regard to *Hiser.* Moreover, the Commission's order gave respondent another opportunity to request an aggravation/mitigation hearing.

Respondent requested the aggravation/mitigation hearing, which was held on April 7, 1992. Both respondent and State Bar counsel were present, and respondent, client A, and client C testified. On June 12, 1992, the Committee issued a second report in which it adopted and incorporated by reference the findings of fact as set forth in its first report. It also found the following aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) failure to cooperate with the State Bar; and (4) vulnerability of at least one of the victims. Additionally, the Committee found the following mitigating factors: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal and emotional problems; and (4) remorse. After considering the above findings, the Committee recommended that respondent be suspended for 120 days followed by a 2–year probation subject to certain conditions.[2]

The State Bar objected to the Committee's report, and on September 12, 1992, this matter came before the Commission for the second time. In its report, the Commission found that the record failed to support the Committee's findings of both remorse and personal and emotional problems. The Commission found that the record did, however, support two additional aggravating factors: indifference to making restitution and substantial experience in the practice of law. By unanimous vote of an 8–member panel, the Commission rejected the Committee's recommendation of a 120–day suspension and recommended instead that respondent be suspended for 2 years.

---

2. The Committee's recommendation, however, was not unanimous. One member dissented, recommending instead that respondent be suspended for at least 6 months and 1 day, which

*Discussion*

### A. *Standard of Review*

In disciplinary matters, this court acts as an independent arbiter of both the facts and the law. *In re Neville,* 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). In acting as an arbiter of the facts, we give deference and serious consideration to the findings of both the Committee and the Commission. *In re Pappas,* 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988), citing *Neville,* 147 Ariz. at 108, 708 P.2d at 1299. Before imposing discipline, however, *we* must be persuaded by clear and convincing evidence that respondent committed the alleged violations. *In re Kersting,* 151 Ariz. 171, 172, 726 P.2d 587, 588 (1986); *see also* rule 54(c), Arizona Rules of the Supreme Court.

Similarly, in acting as an arbiter of the law, we give great weight to the recommendations of the Committee and Commission. *In re Lincoln,* 165 Ariz. 233, 235–36, 798 P.2d 371, 373–74 (1990), citing *Neville,* 147 Ariz. at 115, 708 P.2d at 1306. Yet, *this court* ultimately is responsible for determining the appropriate sanction. *Lincoln,* 165 Ariz. at 236, 798 P.2d at 374.

### B. *Respondent's Violations*

After reviewing the record, we find by clear and convincing evidence that respondent did in fact commit the ethical violations found by the Committee and adopted by the Commission. We find as such not only because the allegations in the complaint are deemed admitted pursuant to rule 53(c)(1), but also because the record supports such a finding. Moreover, when respondent appeared in these proceedings, he did not contest his unethical behavior; he contested only the Commission's recommended sanction.

### C. *Sanctions*

Although respondent admits that he committed the ethical violations found by the Committee and adopted by the Commission,

would invoke the need for respondent to submit an application for reinstatement upon expiration of his period of suspension. *See* rule 71(d), Arizona Rules of the Supreme Court.

he urges this court to reject the sanction recommended by the Commission and to impose instead the sanction recommended by the Committee. Specifically, respondent argues that a 120–day suspension followed by probation, rather than a 2–year suspension, is appropriate in this case. We disagree.

■ In determining the appropriate sanction to impose in a disciplinary matter, we are guided by the principle that "the purpose of bar discipline is not to punish the lawyer but to deter others and protect the public." *Kersting,* 151 Ariz. at 179, 726 P.2d at 595. The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (*Standards*) further assist our determination, especially when the Commission's and the Committee's recommended sanctions differ. *In re Arrick,* 161 Ariz. 16, 22, 775 P.2d 1080, 1086 (1989). As a starting point, the *Standards* provide that a court should consider the following factors in determining the appropriate sanction: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* Standard 3.0.

Respondent violated a number of ethical duties that he owed both to his clients and to the legal system. The most serious of his ethical violations, however, was his breach of the duty enunciated by ER 1.3, which states: "A lawyer shall act with reasonable diligence and promptness in representing a client." As we have stated in prior disciplinary matters, an attorney's most important ethical duties include those obligations owed to clients. *In re Galusha,* 164 Ariz. 503, 504, 794 P.2d 136, 137 (1990); *see also Standards,* Theoretical Framework, at 5.

Although we agree with the findings of both the Committee and the Commission that respondent's conduct was not the product of a dishonest or selfish motive, and we acknowledge that client C was not significantly harmed by respondent's neglect, the fact remains that respondent seriously neglected the cases of 3 clients whom he agreed to represent. Moreover, his neglect caused serious harm both to client A and to client B, whose personal injury actions are forever lost because their claims are now barred by the statute of limitations. In fact, the primary reason that client C escaped serious harm was because he secured other representation after respondent failed to return his phone calls.

Upon evaluating the above considerations, we agree with the Commission that respondent's conduct falls under Standard 4.42, and thus, suspension is warranted in this case. Indeed, by failing to object to the Committee's amended recommendation, respondent has consented to a period of suspension of at least 120 days. *See* rule 53(c)(5), Arizona Rules of the Supreme Court. Consequently, the only remaining issue is the length of the suspension. We therefore consider the aggravating and mitigating factors present in this case to determine whether and to what extent they should affect the ultimate sanction imposed. As we stated above, however, some disparity exists between the findings of the Committee and those of the Commission regarding the aggravating and mitigating factors in this case. We first consider those aggravating and mitigating factors upon which the Committee and the Commission agreed.

Both the Committee and the Commission found respondent's pattern of misconduct, his multiple offenses, his failure to cooperate with the State Bar, and the vulnerability of at least one victim to be aggravating factors. We agree that the record supports their findings as to these aggravating factors.

In addition, both the Committee and the Commission recognized absence of a prior disciplinary record and absence of a dishonest or selfish motive as mitigating factors. Although we agree that the record supports a finding of absence of a dishonest or selfish motive, we do not find absence of a prior disciplinary record to be a mitigating factor in this case.

While this case was pending before the court, respondent was involved in a separate disciplinary proceeding arising out of 2 additional instances of misconduct. After respondent failed to appeal the sanction recommended by the Commission, by order of this court dated February 3, 1994, he was cen-

sured and ordered to pay restitution in an amount totalling $4,247.71. *In re Augenstein*, 178 Ariz. 581, 870 P.2d 399. Because that disciplinary matter has now become final, it constitutes "prior discipline," and we may consider it as such when imposing discipline in this case. *See* rule 54(k)(4), Arizona Rules of the Supreme Court; *In re Wade*, 174 Ariz. 13, 17, 846 P.2d 826, 830 (1993). We therefore reject the findings of the Committee and the Commission that absence of a prior disciplinary record is a mitigating factor in this case. Instead, we find that respondent's prior disciplinary record constitutes an aggravating factor. *See* Standard 9.22(a).

We turn now to those findings upon which the Committee and Commission disagreed. In its second report, the Committee amended its findings to include remorse as an additional mitigating factor. Conversely, the Commission determined that the record failed to support such a finding. The Commission concluded instead that the record supported the additional aggravating factor of indifference to making restitution. We agree with the Commission.

At his aggravation/mitigation hearing, respondent expressed a desire to make restitution to his injured clients. Yet, at the time of the hearing, he had made no effort to compensate them. The settlement that respondent later reached with client A cannot be the basis for a finding of remorse because it apparently was prompted by a malpractice claim that client A had filed against respondent. Restitution that is forced or compelled constitutes neither an aggravating nor a mitigating factor—at most, it is neutral. *See* Standard 9.4(a) and commentary. Furthermore, although respondent claims that financial inability rather than indifference was the reason for his inaction, we find that his credibility is undermined by his failure to contact his clients and offer to them even a mere apology for his neglect.

In any event, we agree with the Commission that "[t]hose seeking mitigation relief based upon remorse must present a showing of more than having said they are sorry.... [T]he best evidence of genuine remorse is affirmative and, if necessary, creative efforts to make the injured client whole." For this reason, we think that respondent's late apology, standing alone, is insufficient to support a finding of remorse. We therefore agree with the Commission's determination that indifference to making restitution is an additional aggravating factor in this case.

The Commission further concluded that the record failed to support the Committee's finding of personal and emotional problems as an additional mitigating factor. Because respondent's self-serving testimony is the only evidence offered to support his claim that he suffered from personal and emotional problems, we agree with the Commission.

According to the *Standards*, a mental disability is considered a mitigating factor only when:

(1) there is medical evidence that the respondent is affected by a ... mental disability;

(2) the ... mental disability caused the misconduct;

(3) the respondent's recovery from the ... mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

Standard 9.32(i). Although respondent maintains that he suffered from "burnout depression," he offered no medical evidence to corroborate this claim, despite the Commission's hint that he do so prior to the aggravation/mitigation hearing. In fact, on two different occasions and in two separate proceedings, respondent had difficulty remembering his doctor's name and the name of the medication that he was taking. Moreover, the record contains no evidence that respondent's alleged emotional problems caused his misconduct. Accordingly, we find that the evidence in the record does not meet the requirements set forth in Standard 9.32(i).

As to respondent's other alleged personal problems, the record is likewise devoid of any evidence other than his own testimony. In any event, even if respondent had presented other evidence of his alleged personal problems, we have stated previously that "we

do not believe this factor justifies respondent's blatant and repeated breaches of his duties to his clients and the bar. He should have communicated with his clients and the bar despite his personal circumstances." *Lincoln*, 165 Ariz. at 236, 798 P.2d at 374. In sum, we agree with the Commission that the record does not contain sufficient evidence to find that respondent's alleged personal and emotional problems constitute a mitigating factor.[3]

Finally, the Commission concluded that respondent's substantial experience in the practice of law should be regarded as an additional aggravating factor in this case. Although respondent had been practicing law for more than 6 years when he committed the first ethical violation in this case, we disagree. Respondent's misconduct is not the type of misconduct upon which his substantial experience in the practice of law could have had any effect. That is, we cannot say that because of his experience, it is more likely that respondent "would have known better" than to engage in such misconduct. We therefore reject the Commission's conclusion that respondent's substantial experience in the practice of law should be regarded as an aggravating factor.

To summarize, we find the following aggravating factors present in this case: pattern of misconduct, multiple offenses, failure to cooperate with the State Bar, vulnerability of at least one victim, indifference to making restitution, and prior disciplinary offenses. Additionally, we find respondent's lack of a dishonest or selfish motive to be a mitigating factor.

We have already concluded that suspension clearly is warranted in this case. In determining the appropriate period of suspension, we are guided by the *Standards*, which advise that suspension generally should be for a period of at least 6 months. *See* Standard 2.3; *see also In re Miranda*,

170 Ariz. 270, 274, 823 P.2d 1278, 1282 (1992). Respondent nevertheless urges this court to impose a 120–day suspension, arguing that a 2–year suspension would be disproportionate to sanctions imposed in other factually similar cases. Because we recognize that "an effective system of professional sanctions must have internal consistency," we find it appropriate to examine sanctions imposed in cases factually similar to respondent's case. *Pappas*, 159 Ariz. at 526, 768 P.2d at 1171.

To support his claim that a 2–year suspension would be an unduly harsh sanction, respondent primarily relies on *In re Nelson*, 170 Ariz. 345, 824 P.2d 741 (1992) (9–month suspension followed by 1–year probation), and *In re Coffey*, 171 Ariz. 544, 832 P.2d 197 (1992) (6–month suspension followed by 1–year probation). In particular, respondent correctly points out that both Nelson and Coffey neglected their clients under circumstances similar to those present in this case. *See Nelson*, 170 Ariz. at 345–46, 824 P.2d at 741–42; *Coffey*, 171 Ariz. at 545–46, 832 P.2d at 198–99. What respondent fails to note, however, is that unlike his own misconduct, neither Nelson's nor Coffey's misconduct resulted in *serious* harm to a client. *See Nelson*, 170 Ariz. at 346–47, 824 P.2d at 742–43; *Coffey*, 171 Ariz. at 546–47, 832 P.2d at 199–200. The fact that respondent's misconduct caused serious harm to 2 of his clients distinguishes his misconduct from the misconduct at issue in both *Nelson* and *Coffey*.

Indeed, it is this fact that distinguishes respondent's misconduct from the misconduct at issue in *Hiser*. Even though neither the State Bar nor respondent referred to *Hiser* when discussing the proportionality implications of this case, we mention *Hiser* primarily because of the substantial role it played in the Committee's initial decision not to recommend that respondent be disbarred. Needless to say, because we find *Hiser* distinguishable, we agree with the Commission

---

**3.** We note that in the prior disciplinary matter discussed above, *In re Augenstein*, 177 Ariz. 581, 870 P.2d 399, the Commission found respondent's alleged personal and emotional problems to be a mitigating factor. We examined the record in that matter with hope of discovering an explanation for the discrepancy between the Commission's findings there and its findings in

this case. We found no explanation other than the obvious—i.e., change in membership on the panel. Suffice it to say, however, that there is no additional evidence in that record that would cause us to question our determination that respondent has not met the proof requirements set forth in Standard 9.32(i).

that it does not preclude the imposition of a 2-year suspension in this case.

We find that the significant harm caused by respondent's misconduct distinguishes this case from those cases discussed above, and therefore we are not persuaded by his argument that a 2-year suspension would be a disproportionally long sanction. In fact, other cases support our conclusion that a 2-year suspension in this case is not only appropriate but also proportionate, given respondent's misconduct. *See also In re Loftus,* 171 Ariz. 672, 832 P.2d 689 (1992) (imposing 2-year suspension on attorney who neglected clients and failed to cooperate with State Bar); *In re Nicolini,* 168 Ariz. 448, 814 P.2d 1385 (1991) (same). Therefore, after considering the aggravating and mitigating factors discussed above, we agree with the Commission's recommendation that a 2-year suspension is a proper sanction for respondent's misconduct.

### Disposition

Respondent is suspended from the practice of law for a period of 2 years. If and when respondent applies for reinstatement, his efforts in assisting his former clients will be reviewed carefully. And, if either injured client remains uncompensated, appropriate conditions for readmission may be fashioned. Pursuant to rule 52(a)(8), respondent is ordered to pay the State Bar the amount of $1,419.33 for costs incurred in this matter.

MOELLER, V.C.J., and MARTONE, J., concur.

FELDMAN, Chief Justice, specially concurring:

I fully agree with the analysis and result reached in this case. I write only to comment on the fact that respondent represented himself, which is seldom wise for any person and almost never wise for a lawyer who is charged with disciplinary violations. Twelve years on the bench have made it obvious to me that the behavior problems leading lawyers to err are often made apparent by self-representation in disciplinary proceedings. This case is no exception. Respondent's brief makes it clear that he is not to be trusted in representing any client. The best that one can say for him is that he represents himself no better than he represented his clients.

ZLAKET, Justice, dissenting.

I agree that respondent should be suspended from the practice of law for a reasonable period of time to ensure that he presents no further threat to the public. I do not agree, however, that his personal and emotional problems should be ignored in mitigation. After seeing and listening to the witnesses, including respondent, the hearing committee specifically found those problems to be a mitigating factor. The disciplinary commission and the court have rejected this important finding because it was unsupported by medical testimony. I take little comfort in such a ruling even assuming, as the majority says, that it is bolstered by the ABA Standards. Those standards are guidelines, nothing more, and in my view they should not be applied where to do so would work an injustice. The respondent's testimony was uncontroverted. The fact that it was also "self-serving" does not make it worthless. To say that it is entitled to no weight at all makes little sense to me.

It is noteworthy that one of the three people on the hearing committee was a prominent Phoenix psychiatrist. Moreover, the transcript of the aggravation/mitigation hearing shows that respondent, representing himself, asked if the committee wanted him to get a letter from his therapist. He explained that he could not afford to pay the witness to come to the hearing, but that he probably could obtain a written report. In an adversarial display that hardly seems appropriate to a proceeding like this, bar counsel strongly objected. The subject was then apparently dropped. In view of the later mitigation finding, one can only conclude that even in the absence of an expert's report or testimony, the committee was persuaded that respondent's difficulties were genuine, not feigned. Furthermore, while the majority is correct that respondent was initially unable to recall the name and address of his doctor, it should be noted that he did provide this information by the end of the hearing.

It is significant that the same mitigation finding of "personal or emotional problems" was made by a completely different hearing committee in the separate disciplinary proceeding now deemed by the court to be a prior infraction for purposes of aggravation. That separate matter arose out of conduct which occurred during the same general time frame as respondent's actions leading to the charges in this case. Remarkably, the disciplinary commission there accepted the above finding in mitigation, specifically noting respondent's testimony that "his negligence and failure to respond to the State Bar were both the result of his depression." Yet, proof in that matter was not significantly different from what was presented here.

Other inconsistencies appear as well. For example, here the commission placed little or no value on respondent's explanation that he was not unwilling to make restitution, but only financially unable to do so. In the other case, it seemed to give favorable treatment to such testimony. In neither commission report is there reference to the other. In fact, both reports specifically recite in mitigation that respondent has had no other disciplinary infractions. Finally, in the "prior" case, the commission recommended only that respondent be censured and placed on probation. It inexplicably did not recommend suspension despite the bar's urgings and the fact that its members must have known of this proceeding.

I also have minor disagreement with the way certain facts are portrayed in the majority opinion. For example, the hearing committee's early desire to disbar respondent was obviously due to his failure to have made an appearance, or to have done anything at all to defend himself (perhaps an additional indication of his depressed mental state). Because of proportionality concerns, however, the committee voted only to suspend him for six months and one day. Later, after respondent requested an aggravation/mitigation hearing and gave his testimony, the committee recommended a 120 day suspension followed by a two year probation. Clearly, the people in this process who had an opportunity to view the witnesses and hear the testimony were moved to retreat substantially from their original positions.

The primary purpose of discipline is to protect the public, not to punish the lawyer. Despite this frequent pronouncement, I perceive an increasingly punitive trend in many of these cases. While I certainly do not condone respondent's conduct, I cannot ignore the hearing committee's finding that his emotional difficulties, resulting from a series of personal crises, contributed significantly to his actions. To me, this is adequately supported by the record. I could therefore adopt the committee's recommendation of a 120 day suspension, accompanied by strict probation and specific conditions for reinstatement designed to ensure respondent's stability and competence before permitting his return to the practice of law. Such safeguards should be sufficient to protect the public.

I would also not have difficulty if the suspension were for six months and one day, as recommended by one member of that committee. I cannot, however, subscribe to the two year suspension imposed here, because it fails to take into account important mitigating evidence specifically found by not just one, but two distinct hearing committees. I therefore respectfully dissent.