852 P.2d 407

**In the MATTER OF a Member of the State Bar of Arizona, Irby K. CAIN, Respondent.**

**No. SB-93-0011-D.**
**Comm. No. 86-0877.**

Supreme Court of Arizona.

May 20, 1993.

Irby K. Cain, Scottsdale, pro se.

Jessica G. Funkhouser, State Bar Counsel, Harriet L. Turney, Chief Bar Counsel, Phoenix, for the State Bar of Arizona.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that **IRBY K. CAIN**, a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of two years for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 63(a), Rules of the Supreme Court of Arizona, **IRBY K. CAIN** shall notify all of his clients, within ten (10) days from the date hereof, of his inability to continue to represent them and that they should promptly retain new counsel, and shall promptly inform this court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED **IRBY K. CAIN** shall pay the costs of these proceedings in the amount of $5,771.25.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION
OF THE
SUPREME COURT OF ARIZONA

Comm. No. 86–0877

In the Matter of

IRBY K. CAIN,

a Member of the

State Bar of Arizona, RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed December 30, 1992.]

This matter initially came before the Disciplinary Commission of the Supreme Court of Arizona on January 20, 1990, for review of the hearing committee's recommendation of acceptance of an agreement for discipline by consent providing for a three-year retroactive suspension. Upon consideration of oral argument and review of the record on appeal, the Commission rejected the agreement. The Supreme Court affirmed the Commission's rejection of the agreement, and remanded the matter to the hearing committee for further proceedings.

This matter again came before the Commission on November 14, 1992, for review of the record on appeal pursuant to Rule 53(d), R.Ariz.Sup.Ct. The Commission considered the hearing committee's recommendation of suspension. No objections to the hearing committee's recommendation were filed.

### Decision

By a unanimous vote of seven aye,[1] the Commission adopts the recommendation of the hearing committee that Respondent be suspended for a period of two years. The Commission also unanimously adopts the findings of fact and conclusions of law of the hearing committee.

1. Commissioners Bonwell and Malm did not participate in these proceedings.

### Facts

This matter arises from (a) Respondent's representation of the plaintiffs (the "Clients") in a quiet-title action from 1978 through 1979; (b) the contingency fee agreement entered into in connection with Respondent's representation of the Clients; and (c) other dealings with the Clients from 1980 through 1983.

Respondent's firm was retained by the Clients in October 1978 to represent them in a quiet-title proceeding to clear trust property of a long-term lease with option to purchase. This involved the approximately nine acres owned by the Clients.[2] The Clients were unsophisticated regarding real estate matters. Respondent knew that the subject property was reasonably valuable when he accepted representation of the Clients. Respondent entered into a written retainer agreement with the Clients which provided his firm with a nonrefundable retainer of $5,000, in addition to a contingency fee equal to 10% of the gross value of the Client's entire nine-acre property. The agreement did not specify the nature of the contingency, in that it failed to state the time at which the property would be valued for purposes of calculating the contingency. Additionally, the agreement did not clarify whether costs and expenses would be deducted from the recovery before or after the 10% of gross value calculation was to be made.

Respondent and his clients lost the case when the court granted the defendants' motions for summary judgment and declaratory judgment. After Respondent explained the court's ruling to his clients and advised them of their options, the Clients requested that Respondent appeal the ruling. The Clients agreed in writing to increase the contingent fee for the appeal to a total of 20% of the gross value of the property. Accordingly, Respondent appealed the ruling.

Throughout the superior court action and the pendency of the appeal, Respondent

2. The Clients retained Respondent for this action after terminating the services of their former counsel, with whom they were dissatisfied.

engaged in negotiations with the lessees on his clients' behalf to attempt to buy out the lessees' interest in the lease. Respondent also engaged in negotiations with prospective buyers for the property. In October 1979, the Clients entered into an agreement to sell the property to an outside buyer for $63,829.80 per acre.[3] In November 1979 the lessees stipulated that the appeal could be dismissed with prejudice, and soon thereafter entered into a mutual cancellation of the lease. The Clients paid Respondent and his firm for their services in full by May 1981, with half of the fee paid to the firm, and half of the fee paid to Respondent. Respondent split the fee 75%/25% with his partner.

A few months later, Respondent borrowed $150,000 from the Clients for two years with interest payable at the rate of 17% per annum. On that same date, Respondent also borrowed $50,000 from the Clients under the same terms. The loan for $150,000 was not secured for nearly two years; the $50,000 loan was never secured. Respondent borrowed this money from the Clients without first advising them to seek independent counsel as to the advisability of making the loans to him. Respondent repaid both loans in full, although the $150,000 loan was paid two months late.

In September 1981, Respondent agreed not to charge the Clients any additional attorney's fees, in partial consideration for the loans they had made to him. At that time, there were no outstanding attorney's fees due Respondent. However, in January 1983, Respondent charged the Clients additional attorney's fees in the amount of $7,866.

In November 1981, Respondent sold a $29,000 promissory note to the Clients for $21,000. Respondent had purchased the note for $17,000. Respondent sold them the note without first advising them to seek independent counsel as to the advis-

ability of purchasing the note. In February 1983, at the request of the Clients and their new attorney, Respondent repurchased the note for the sum of $21,000. The Clients retained all interest paid on the note to that date.

In December 1981 and January 1982, respectively, Respondent made two loans to the Clients totalling $4,350. Respondent repaid himself more than he was entitled from the trust funds of the Clients, although Respondent claims the overpayment was the result of a bookkeeping error.

In April 1982, Respondent converted $5,000 of the Clients' trust funds to his own use and possession, without the permission or authority of the Clients. Respondent's explanation that the money was for past attorney's fees was in direct conflict with notations on the check stub which indicated it was for an "advance" and "retainer" for attorney's fees. Additionally, the initial notation on the check indicated that it was a loan to Respondent. The committee found Respondent's explanation for this conduct to be inconsistent, inadequate, and unpersuasive.

Throughout his representation of the Clients and their trust funds, Respondent inadequately maintained records of the Clients' funds and failed to separate his own funds from those of his clients. Respondent's records of hours spent on the Clients' work were inaccurate, he never sent statements or notice of funds disbursed or received by the trust, nor did he inform them of the balances of their account.

Although the complaint included additional allegations regarding Respondent's conduct, the committee did not believe they were supported by clear and convincing evidence.

Respondent began withdrawing from the practice of law in 1988, and in February 1989, voluntarily placed himself on inactive

---

**3.** The Clients were not willing to sell the property to the lessees pursuant to the purchase option on the lease, as the initial lease agreement had provided a first option to purchase the premises for only $10,000 per acre, with an additional $1,000 per acre for each subsequent five year period that the lease was renewed.

status. Respondent has not practiced since that time.

### Discussion of Decision

■ The committee found, and the Commission agrees, that Respondent's conduct violated the following ethical rules:[4]

1. Respondent violated DR 2–106(B) when he charged an excessive fee for his services pursuant to the retainer agreement, and when he charged attorney's fees after agreeing not to charge additional fees;

2. Respondent's retainer agreement created a conflict of interest, in violation of DR 5–101, as it failed to clearly specify the nature of the contingency;

3. Respondent entered into business transactions without ensuring that his clients had full disclosure, in violation of DR 5–104, when he borrowed money from the Clients without advising them to seek independent counsel, and when he sold a promissory note to the Clients at a profit without first disclosing what he had paid for the note;

4. Respondent's conduct exhibited dishonesty, fraud, deceit, and misrepresentation, in violation of DR 1–102(A)(4), when he failed to secure his loans from the Clients, when he charged attorney's fees after agreeing not to charge additional fees, and when he converted $5,000 from his clients' trust account;

5. Respondent's conduct adversely reflected on his fitness to practice law, in violation of DR 1–102(A)(6), when he sold a promissory note to the Clients at a profit without first disclosing what he had paid for the note, when he repaid himself more than he was entitled to for loans he had made to the Clients, and when he converted $5,000 from his clients' trust account;

6. Respondent failed to preserve the identity of his clients' funds, in violation of DR 9–102(A) and (B), when he unlawfully converted client funds, and when he failed

to maintain adequate records of his clients' funds; and

7. Respondent neglected a legal matter, violating DR 6–101(A)(3) when his failure to maintain adequate records resulted in his failure to take proper care of his clients' monies.

The American Bar Association's *Standards for Imposing Lawyer Sanctions* are used by the Court in considering the appropriate sanction for a violation of the Rules of Professional Conduct. *In re Morris,* 164 Ariz. 391, 793 P.2d 544 (1990). The Commission is guided by the Standards, as well.

Standard 7.3 provides for reprimand (censure in Arizona) when a lawyer negligently engages in conduct that is a violation of a duty owed to as a professional, and causes injury or potential injury to a client, the public, or the legal system. In this matter, although the Respondent's purpose in charging an excessive fee may not have been to harm his client, he nevertheless violated his duty to charge a reasonable fee.

Standard 4.3 addresses failure to avoid conflicts of interest. Standard 4.32, most applicable in this instance, provides for suspension when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client. Respondent entered into a retainer agreement that created an inherent conflict of interest by its ambiguous nature. Additionally, Respondent engaged in a number of business transactions with his clients without advising his clients to seek independent counsel, thus ensuring full disclosure.

Standard 4.6 concerns lack of candor. Standard 4.62 provides for suspension when a lawyer knowingly deceives a client, and causes injury or potential injury to a client. The Commission agrees with the committee's finding that Respondent's failure to secure his loan from his clients was done knowingly and deceptively, as was charging additional fees after agreeing not

---

4. As the conduct occurred prior to February 1, 1985, it is governed by the former Code of Professional Responsibility.

to do so, and selling the promissory note to his clients at a profit without their knowledge.

Standard 5.13 provides for censure when a lawyer engages in noncriminal conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

Respondent's lack of diligence is addressed by Standard 4.4. Standard 4.41 provides for disbarment when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client, or when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. Respondent kept careless and virtually nonexistent records of his clients' monies, and failed to keep his own funds separate from those of the Clients. The potential for serious injury was enormous.

Finally, the committee found that Respondent knowingly paid himself $5,000 from his clients' account without obtaining their permission. Standard 4.11 provides for disbarment when a lawyer knowingly converts client property and causes injury or potential injury to a client.

The Commission also reviewed Standards 9.22 and 9.32, factors to be considered in aggravation and mitigation. In aggravation, the Commission agrees with the committee, and finds a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of his conduct in two of the counts, and vulnerability of his clients. In mitigation, Respondent has no prior disciplinary record, and has displayed a cooperative attitude toward these proceedings. Additionally, although Respondent denies that his conduct was inappropriate in two of the counts, he has exhibited remorse for his conduct as a whole.

The Theoretical Framework to the Standards states that "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of viola-

tions ..." (p. 6). The most serious instances of misconduct in the present matter warrant disbarment, as indicated in the references to Standards 4.11 and 4.41 above. Additionally, the factors in aggravation appear to outweigh those in mitigation. However, the Commission agrees with the committee that the peculiar circumstances involved in this case make this matter an exception to those guidelines. Specifically, the Commission focuses on the substantial delay in processing this case. After this matter initially came before the Commission in January 1990 on the agreement for discipline, it took nearly three years for it to again come before the Commission, after rejection of the agreement by the Commission and remand by the Supreme Court. At each step in the process unusual delays occurred, which resulted in substantial prejudice to Respondent.

The process of entering into an agreement for discipline and presenting that agreement to the disciplinary process involves time. If accepted, an agreement for discipline can ultimately reduce the length of time a matter spends in the disciplinary process. However, in any case where a respondent enters into an agreement for discipline, the respondent should know that delays will arise if, at any step in the process, the agreement for discipline is rejected. Rejection renders that time lost. Respondents should not presume that, in any given case, an agreement for discipline will be accepted or that any "credit" will be given for the time periods which may pass during the review process.

In this case, delays arose throughout the disciplinary process. For example, upon remand, the parties agreed to use the trial transcript of an underlying malpractice action as the "record" for purposes of discipline. The Commission commends this action, as the cost and time involved in conducting an evidentiary hearing after already having taken evidence in the civil trial represents, in many instances, duplicated effort. However, the court reporter who reported the civil trial had difficulty, due to illness, in completing the transcript in a prompt manner. This put the entire

process "on hold" for some time, while both Respondent and the State Bar awaited the transcripts. Many unique delays such as this occurred, none of which could be attributed to Respondent.

Obviously, the Commission does not contemplate delay at each step in the process in most cases. Parties must recognize that delay is part of the process and is not necessarily a factor in determining an appropriate sanction. In the instant case, however, the Commission believes that the delays that occurred require serious consideration.

The Commission believes that, under ordinary circumstances, disbarment or a four-year suspension would represent appropriate discipline on the facts of this case. However, because Respondent terminated his practice in February 1989, and because the State Bar recognized and accepted that termination of active practice in giving consideration to the agreement for discipline, the Commission believes that imposing a four-year suspension, at this time, would create unfair prejudice to Respondent. Respondent could not, with a four-year suspension, reapply for admission until, at the earliest, 1996, seven years after terminating his practice. The Rules of Professional Conduct do not contemplate, under any circumstances, a suspension or disbarment which lasts for more than five years. The seven-year suspension would represent, on these facts, an unfair sanction.

The Commission emphasizes that it considers each case on its particular facts. The Commission's decision in this case is due to the unusual circumstances involved herein. Parties should not, under other circumstances, presume that this ruling will apply to their facts.

Therefore, upon consideration of the facts in this matter, and the particular circumstances of the delay involved, the Commission agrees with the committee, and recommends that Respondent be suspended for a period of two years.

RESPECTFULLY SUBMITTED this 28th day of December, 1992.

/s/ Raymond W. Brown
Raymond W. Brown, Chair
Disciplinary Commission