793 P.2d 544

**In the Matter of a Member of the State Bar of Arizona, Richard William MORRIS, Respondent.**

**No. SB–90–0005–D.**

Supreme Court of Arizona.

May 31, 1990.

Richard W. Morris, San Diego, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, and Yigael M. Cohen, Staff Bar Counsel, Phoenix.

## OPINION

MOELLER, Justice.

### JURISDICTION

Respondent, Richard W. Morris, has practiced law for many years in San Diego, California, but has maintained an Arizona bar membership. On October 1, 1987, he pled guilty in the United States District Court for the Northern District of Texas to the federal felony offense of misprision of felony, a violation of 18 U.S.C.A. § 4 (West 1969 & Supp.1990). Based on that conviction, disciplinary proceedings were commenced against respondent in both California and Arizona. The California proceedings are pending.

Based on the federal court conviction in Texas, this court entered an order of interim suspension on February 3, 1989. After hearing, the Arizona State Bar Hearing Committee 8B (Committee) recommended, by a two-one vote, that respondent be suspended for one year. The Disciplinary Commission of the Supreme Court (Commission) recommended that the suspension be for a period of six months, retroactive to the date of interim suspension. This case is presented to us on the record, respondent and the State Bar having stipulated that no appeal would be filed from the Commission report. We have jurisdiction pursuant to Rules 53(e) and 42 (E.R. 8.5), Ariz.R.Sup.Ct., 17A A.R.S.

### FACTS AND PROCEDURAL HISTORY

Although respondent is admitted to practice law in both Arizona and California, the great majority of his practice has been in San Diego, California. There he served as a deputy district attorney, as president of the local bar association, and as director of the local chamber of commerce.

At some point, James G. Bryan, respondent's client and a principal of United States Tax Planning Service (USTPS) created a plan by which an offshore insurance company known as Professional Liability Insurance Company (PLIC) would sell personal property insurance to property owners in the United States. In April 1982, Bryan sought legal advice from respondent concerning whether PLIC could reinsure its risks with a company wholly owned by the insured. After conducting legal research, respondent advised Bryan that, in respondent's opinion, any deduction taken for the premium charged the insured would most likely be disallowed by the Internal Revenue Service (IRS) as being a reserve, rather than a legitimate deduction for an insurance premium. Bryan was dissatisfied with respondent's advice and terminated their attorney-client relationship in May 1982.

Five years later, on April 30, 1987, a federal grand jury of the Northern District of Texas handed down a forty-page indictment consisting of twenty-five counts involving a total of twenty-two defendants. Respondent was named in one of the counts as an alleged conspirator to defraud the United States by impeding the IRS. No other allegation was made against him. The majority of the acts alleged in the indictment occurred after Bryan had terminated his attorney-client relationship with respondent. The indictment attributed no overt acts of fraud to respondent.

After contacting several defense attorneys in Dallas, respondent learned that his defense and trial would take up to six weeks and cost from $60,000 to $100,000. Respondent could not afford the estimated fees and thought it would be too costly to abandon his practice in California and move to Dallas for the duration of the trial. As a result, respondent and the government agreed upon a plea bargain. The government filed a superseding indictment alleging that respondent knew that Bryan and others had committed a felony and that respondent "willfully did conceal the same and did not as soon as possible make known the commission of said felony to any judge or other person in civil or military authority under the United States." Respondent pled guilty to the superseding indictment.

The federal court in Texas accepted the plea based upon an agreed written factual basis, and then suspended imposition of sentence and placed respondent on probation for two years. No fine, incarceration, or restitution was ordered. Respondent's probation was terminated on a successful basis eight months early at the request of his probation officer.

The Hearing Committee found that respondent was caught "between a rock and a hard spot" in choosing whether to reveal communications from his client or face criminal prosecution (Committee report at 3). The Committee also found that, once he was contacted by the IRS, respondent disclosed the matter to them in compliance with E.R. 1.6(d). The Committee concluded that respondent had not committed a dishonest act or an act reflecting adversely on his fitness or trustworthiness as a lawyer. However, because respondent had been convicted of a federal felony, the Committee believed discipline was required under Rule 51(a), Ariz.R.Sup.Ct., 17A A.R.S. The Committee therefore recommended that respondent be suspended for one year. One Committee member disagreed and recommended that respondent be disbarred.

The Commission agreed with the Committee's factual and legal conclusions but disagreed as to the recommended sanction. The Commission found that respondent had not actively concealed his client's wrongdoing but had merely failed to report it. According to the Commission, mere silence or failure to inform law enforcement authorities is not sufficient to constitute an offense of misprision of felony under federal law. Consequently, the Commission found that notwithstanding the guilty plea, "it does not appear that respondent actually committed a felony here." (Commission report at 2). Nonetheless, the Commission reasoned, the mere fact that respondent has a felony conviction "is serious in and of itself." (Id. at 5). After reviewing several mitigating factors, the Committee concluded that respondent should be suspended for

a period of six months retroactive to the date of interim suspension. We agree with the recommended sanction but disagree with the Commission's reasoning.

## ISSUE PRESENTED

We must decide the effect to be given to the federal conviction and the appropriate sanction to impose under the facts and circumstances of this case.

## DISCUSSION

In disciplinary proceedings we act as an independent "trier of both fact and law in the exercise of our supervisory responsibility over the State Bar." *In re Neville,* 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). We do, however, "give deference and serious consideration" to the reports of the Committee and Commission. *In re Pappas,* 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988). Guiding our decision is the principle that "the purpose of bar discipline is not to punish the lawyer but to deter others and protect the public." *In re Kersting,* 151 Ariz. 171, 179, 726 P.2d 587, 595 (1986). In addition, the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) aids our decision. *In re Arrick,* 161 Ariz. 16, 22, 775 P.2d 1080, 1086 (1989).

Title 18 U.S.C. § 4 provides:

**Misprision of felony**

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

We agree with the Commission that respondent did not affirmatively conceal his former client's offense from the authorities. Rather, he failed to take affirmative steps to report the offense. Under Rule 42 (E.R. 1.6(c)) Ariz.R.Sup.Ct., 17A A.R.S., respondent ethically could have reported the offense, but was not required to do so. However, respondent is not charged with a violation of Rule 42, but with having been convicted of a federal felony. Respondent never challenged his felony conviction or the factual basis for it, nor did he present any constitutional challenge to the provision under which he was convicted. Thus, we are confronted with the limited issue of appropriate discipline. We do not address any issue relative to the attorney-client privilege or to an attorney's duty to disclose a client's criminal activities.

■ The Commission's report suggests it believes that respondent is not actually guilty of the felony of which he stands convicted.[1] However, Rule 57(a)(3) Ariz.R. Sup.Ct., 17A A.R.S. provides:

Receipt by the state bar of a certified copy of the judgment of conviction, or other information of conviction of a lawyer, shall be treated and processed as is any other charge against a member, except that the sole issue to be determined shall be the extent of the discipline to be imposed. Proof of conviction shall be conclusive evidence of guilt of the crime for which convicted in any discipline proceeding based on the conviction.

Pursuant to this rule, respondent's guilt is conclusively established by proof of conviction. *In re Rivkind,* 164 Ariz. 154, 791 P.2d 1037 (1990). *See In re Wines,* 135 Ariz. 203, 205, 660 P.2d 454, 456 (1983). Rule 57 does not permit relitigation of the merits of the criminal case here. Therefore, to the extent the Commission's report suggests otherwise, we disapprove it.

■ Instead, the issue we address is the extent of discipline to be imposed, given the validity of the conviction. On that is-

---

1. The elements of the crime of misprision of felony have been stated to be: (1) a felony was committed, (2) defendant had knowledge of the felony, (3) defendant failed to notify authorities and (4) defendant took an affirmative step to conceal the crime. The Commission's belief in respondent's innocence is based on the finding that he took no affirmative step to conceal his client's offense. Mere passive failure to report a felony has been held insufficient to sustain a conviction. *United States v. Davila,* 698 F.2d 715, *reh'g denied,* 703 F.2d 557 (5th Cir.1983); 21 Am.Jur.2d *Criminal Law* § 35 (1981).

sue, the facts and circumstances surrounding the offense for which respondent was convicted may appropriately be considered. ABA *Standard* 3.0 suggests that we consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.

The *Standards* Rule 5.1 provides:

5.11 Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

We believe suspension is the appropriate discipline in this case. There is no evidence that respondent intended to interfere with the administration of justice; nor did he attempt to actively deceive or defraud a tribunal. The prosecuting attorney in respondent's criminal case wrote a letter in which he described respondent's involvement with Bryan and USTPS as lasting for a "relatively short period of time." The prosecutor also wrote, "My recollection is that the majority of the fraudulent sales by members of USTPS organization occurred after [respondent] had ceased contact with Mr. Bryan due to [respondent's] increasing awareness of how the programs actually operated." Additionally, the prosecutor de-

scribed respondent's cooperation with the government to have been "very valuable."

Moreover, several mitigating factors persuade us that the discipline recommended by the Commission is appropriate. Respondent has been a member of this bar for more than twenty years. He has not had a prior disciplinary matter. We also consider in mitigation several letters of recommendation sent to the sentencing judge in respondent's criminal case. Furthermore, respondent has evidenced no dishonest or selfish motive or desire for pecuniary gain. He fully cooperated with the IRS investigation and has been cooperative throughout these disciplinary proceedings.

We must tailor the discipline in each situation to the individual facts of the case in order to achieve the purposes of discipline. *See Wines*, 135 Ariz. at 207, 660 P.2d at 458. In this case and under these facts, we think the public is adequately protected by suspending respondent for six months retroactive to the date of his interim suspension.

DISPOSITION

We adopt the Commission's recommendation of a six-month suspension retroactive to the date of interim suspension. Respondent is also ordered to pay the State Bar of Arizona $594.50 for expenses of these proceedings.

GORDON, C.J., FELDMAN, Vice C.J., and CAMERON and CORCORAN, JJ., concur.