799 P.2d 1350
In re Steven R. OCKRASSA a Member
of the State Bar of Arizona,
Respondent.

No. SB–89–0011–D.

Disc. Comm. No. 86–1452.

Supreme Court of Arizona.

Sept. 18, 1990.

Reconsideration Denied
Nov. 27, 1990.

Steven R. Ockrassa, Williams, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, Suzette I. Pintard, Staff Bar Counsel, Phoenix.

## OPINION

CORCORAN, Justice.

The State Bar filed a complaint on January 12, 1988, alleging that respondent violated the ethical rules regarding conflicts of interest. The Hearing Committee (Committee) filed its report on September 13, 1988, finding that respondent violated Ethical Rule 1.9, Rules of Professional Conduct, contained in Rule 42, Rules of the Supreme Court. The Committee recommended an informal reprimand.

The Disciplinary Commission (Commission) heard oral argument on the matter on November 12, 1988. Its report, issued on December 6, 1988, recommended that respondent be suspended from the practice of law for 90 days. Respondent timely appealed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and rule 53(e), Arizona Rules of the Supreme Court.

## Facts

Respondent was a contract public defender for the City of Kingman in 1982 and 1983. During that time, he was appointed to represent Carl Jay Otto in three criminal cases alleging violations of A.R.S. § 28–692(A), which prohibits driving under the influence of intoxicating liquors (DUI). Mr. Otto was convicted in all three cases. Two of the convictions were obtained as a result of plea agreements, the other following a jury trial. Respondent's representation of Mr. Otto terminated on February 28, 1983.

In 1986, respondent was employed as a deputy county attorney pursuant to a contract with the Mohave County Attorney's office. In that capacity, respondent represented the state in two criminal actions against the same Mr. Otto, who was charged with DUI as a third offense within the preceding 60 months. See A.R.S. § 28–692.01. These felony actions were filed in Mohave County Superior Court as CR–8444 and CR–8552. Defendant Otto filed a notice of disclosure that he would assert the invalidity and insufficiency of the prior convictions and a conflict of interest on the part of respondent. He also filed a motion in limine in CR–8444 to suppress any allegation of prior conviction. Respondent had represented Mr. Otto in both prior convictions alleged by the state.

The deputy public defender who represented Mr. Otto in CR–8444 and CR–8552 requested that respondent withdraw as prosecutor, citing a conflict of interest based on respondent's prior defense representation of Mr. Otto. The deputy public defender expressed his concerns in a letter to respondent, who declined to withdraw. Subsequently, when the alleged conflict of interest was raised in the criminal prosecution involving Mr. Otto, the trial judge advised the deputy public defender that he had an ethical obligation to report per-

ceived violations of the Rules of Professional Conduct to the State Bar. *See* ER 8.3(a); *In re Himmel*, 125 Ill.2d 531, 127 Ill.Dec. 708, 533 N.E.2d 790 (1988). Shortly thereafter, Mr. Otto pleaded guilty to the criminal charges in CR–8444 and CR–8552. At no time did Mr. Otto consent to respondent's representation of the state.

Kenneth D. Everett, the Mohave County Public Defender, informed the State Bar of respondent's conduct. In response to the Bar's letter of inquiry, respondent denied that a conflict of interest existed because the prior representation had been concluded, was remote in time, and had no prejudicial effect on the outcome of the case. He noted that, before prosecuting Mr. Otto, he discussed the matter with his superiors, the Mohave County Attorney and his chief criminal deputy. Neither believed that the situation presented an ethical problem.

After a finding of probable cause, the State Bar filed a formal complaint against respondent. The complaint alleged in Count 1 that the foregoing facts established a violation of ER 1.9. The complaint also alleged as Count 2 that respondent previously had been sanctioned for violations of the Rules of Professional Conduct. Respondent filed an answer, the parties agreed on a stipulated statement of facts, and the matter was set for hearing before the Committee. A hearing was held on June 30, 1988.

In its report, filed on September 13, 1988, the Committee concluded that the allegations of Count 1 had been established by clear and convincing evidence and constituted a violation of ER 1.9. The Committee found that respondent was previously censured on July 12, 1984, for a conflict of interest violation and for failing to reveal the conflict to his client or to act to eliminate the conflict for many months. The Committee also found that respondent was informally reprimanded on September 5, 1984, for conflict of interest and revealing client confidences, and on December 6, 1985, for failing to appear at a scheduled deposition, inconveniencing his client, and failing to adequately prepare his client for a scheduled deposition. The Committee noted that "Respondent has engaged in a course of conduct evidencing a lack of appreciation of conflicts of interest." Based on these findings, the Committee recommended that respondent be informally reprimanded.

Respondent filed a notice of appeal from the Committee report and the Commission heard the matter on November 12, 1988. The Commission adopted the Committee's findings of fact and conclusions of law, but recommended a 90–day suspension. The Commission recommended the increased sanction based on its finding that "Respondent repeatedly ignored his duty to withdraw in this case upon clear evidence and after demand. His prior sanctions indicate an unacceptable pattern of conduct." Respondent appealed to this court from the Commission's recommendation.

## Discussion

This court sits as the ultimate "trier of both fact and law in the exercise of our supervisory responsibility over the State Bar." *In re Neville*, 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). However, we give serious consideration to the findings and recommendations of the Committee and Commission. *In re Petrie*, 154 Ariz. 295, 297, 742 P.2d 796, 798 (1987). Charges of professional misconduct must be established by clear and convincing evidence. *In re Kersting*, 151 Ariz. 171, 172, 726 P.2d 587, 588 (1986).

ER 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as ER 1.6 would permit with respect to a client or when the information has become generally known.

578

Undoubtedly, respondent's interests as prosecutor were materially adverse to those of his former client, Mr. Otto. However, respondent argues that his 1986 DUI prosecution of Mr. Otto is not substantially related to the earlier DUI charges in which he served as defense counsel. We find respondent's argument meritless. Mr. Otto was charged with DUI as a third offense within 60 months. The validity of his prior convictions was directly in issue. Mr. Otto had disclosed his intention of asserting invalidity and insufficiency of the prior convictions as a defense.

Respondent claims that this factor is not determinative because the prior DUI convictions are not considered elements of the offense; rather, they serve to enhance punishment. *See State ex rel. Collins v. Udall*, 149 Ariz. 199, 200, 717 P.2d 878, 879 (1986). We do not believe that, in the context of multiple DUI offenses, a "substantial relationship" is established only if the prior conviction is an element of the subsequent offense. One of the aims of ER 1.9 is to protect the client. *See* ER 1.9 comment. Respondent's conduct in prosecuting Mr. Otto created a substantial danger that confidential information revealed in the course of the attorney/client relationship would be used against Mr. Otto by respondent, his former attorney. Although respondent claims that he does not remember the content of any such confidential communications by Mr. Otto, the protection of the rule should not be so lightly cast aside.

> [T]he [substantial relationship] test itself is premised, at least in part, on the presumption that a lawyer who now wants to represent an interest adverse to a former client has received confidences of that former client, which he should not be allowed to use now against the former client. The majority of courts that have considered the issue have held that the presumption that a lawyer received such confidences may not be rebutted.

*Lawyers' Manual on Professional Conduct* 51:201 (ABA/BNA 1990).

We need not decide whether the presumption is irrebuttable in this case because respondent presented evidence insufficient to raise that issue. Our State Bar Committee on the Rules of Professional Conduct, in an informal ethics opinion, recognized the presumption of receipt of client confidences in interpreting the former Code of Professional Responsibility. The committee noted that "if the attorney switches sides in the same case or a substantially related case, it is presumed that the former client communicated confidential information to the attorney." Opinion No. 81–29, at 4 (Sept. 17, 1981). The opinion concluded that "[a]n attorney who previously represented a client in defense of a criminal case cannot later prosecute his or her former client in another criminal case." Opinion 81–29, at 3. Although the opinion did not apply the current Rules of Professional Conduct, the Committee on the Rules of Professional Conduct has continued to examine subsequent representation cases carefully. *See* Opinion No. 89–04 (May 3, 1989) (former county attorney is ethically prohibited from representing defendants whom he prosecuted personally); Opinion No. 85–6 (Oct. 18, 1985) (former public defender who becomes a prosecutor cannot participate in the prosecution of co-conspirators of his former client where the charges are based on the same transaction).

ER 1.9 also aims to avoid a public perception of "switching sides." The comment to the rule provides:

> [A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Thus, matters will tend to be substantially related when such a danger exists. Re-

spondent did not "switch sides" in the middle of a single criminal proceeding against Mr. Otto. However, the nature of the DUI offense, with its exponential punishment for multiple offenses, makes respondent's conduct more akin to "switching sides" than had the subsequent prosecution involved, for example, forgery. We decline to view the subsequent DUI charge as a "wholly distinct problem of the same type," primarily because of the danger that respondent received confidential communications during the prior representation.

Respondent attempts to minimize the gravity of his conduct by placing blame "higher up the ladder." The fact that respondent's superiors did not believe that respondent's prosecution of Mr. Otto presented an ethical problem does not weigh heavily in respondent's favor. Even minimal research would have disclosed that this court and the State Bar Committee on the Rules of Professional Responsibility have consistently found ethical violations in similar circumstances. In *State v. Latigue,* this court disqualified the entire Maricopa County Attorney's Office from prosecuting a matter due to the Chief Deputy County Attorney's prior representation of the defendant in the same matter. 108 Ariz. 521, 502 P.2d 1340 (1972). *Latigue* is distinguishable because it was decided under the former Code of Professional Responsibility and involved a motion for disqualification based on an attorney "switching sides" during a single criminal proceeding. Additionally, we note that the current Rules of Professional Conduct contain significant changes affecting vicarious disqualification. We believe that *Latigue* and the existing informal ethics opinions contain sufficiently applicable language to alert respondent to the potential ethical problems his conduct created, regardless of the opinions of his superiors.

We find, by clear and convincing evidence, that respondent's conduct in prosecuting Mr. Otto constituted a violation of ER 1.9(a). We now turn to the appropriate sanction to be imposed.

*Sanction*

In determining the appropriate sanction for a violation of the Rules of Professional Conduct, we consider the American Bar Association's *Standards for Imposing Lawyer Sanctions. In re Morris,* 164 Ariz. 391, 393, 793 P.2d 544, 546 (1990). In imposing sanctions, we consider (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *Standard* 3.0; *see Morris,* 164 Ariz. at 395, 793 P.2d at 548. The purposes of lawyer discipline are to protect the public and to deter future ethical violations. *In re Tarletz,* 163 Ariz. 548, 554, 789 P.2d 1049, 1055 (1990).

*Standard* 4.3, governing failure to avoid conflicts of interest, provides that "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." *Standard* 4.32. The commentary notes that "suspension is appropriate when a lawyer knows or *should know* that the interests of a client are materially adverse to the interests of a former client in a substantially related matter, and causes injury or potential injury to the former or the subsequent client." *Standard* 4.32 commentary (emphasis added). *Standard* 4.33, which also is arguably applicable, provides that "[r]eprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." The commentary to that standard notes that "[c]ourts also impose reprimands in cases of subsequent representation."

In choosing between an informal reprimand and suspension, we consider respondent's prior disciplinary violations as aggravating circumstances,[1] rather than as

---

1. We note that the State Bar set forth the allega-

tions of respondent's previously sanctioned ethi-

**580**

separate counts of the complaint. Rule 54(k)(4), Rules of the Supreme Court; *see In re Wines,* 135 Ariz. 203, 206, 660 P.2d 454, 457 (1983). *Standard* 8.2 recommends suspension when "a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Because respondent has demonstrated an insensitivity to conflicts of interest evidenced by a pattern of misconduct, we find that suspension is the appropriate sanction. We adopt the Commission's recommendation that respondent be suspended for a period of 90 days.

We must tailor the discipline in each situation to the individual facts of the case to achieve the purposes of discipline. *Wines,* 135 Ariz. at 207, 660 P.2d at 458. Although *Standard* 2.3 recommends that suspensions be equal to or greater than 6 months, we believe that a 90–day suspension is appropriate in this case. Respondent is a public lawyer who is unlikely to receive any income during the period of his suspension, unlike lawyers in private practice who may continue to receive fees from work performed before the suspension.

### *Disposition*

Respondent is suspended from the practice of law for a period of 90 days and ordered to pay the State Bar $1,595.27 in costs and expenses.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

NOTE: Chief Justice FRANK X. GORDON, Jr. has recused in this matter and did not participate in its determination.

cal violations as Count 2 of the complaint. Those prior disciplinary actions are not considered by this court to be a separately charged

ethical violation, but are aggravating circumstances affecting the scope of the sanction. *See* rule 53(c), Rules of the Supreme Court.