881 P.2d 1146

**In the Matter of a Disbarred Member of the State Bar of Arizona, James Byers FEELEY, Attorney No. 002464, Respondent.**

**No. SB–94–0039–D.**

**Comm. Nos. 92–0227, 92–0280 and 92–1133.**

Supreme Court of Arizona.

Sept. 23, 1994.

Harriet L. Turney, Chief Bar Counsel, State Bar of Arizona, for the State Bar.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined sua sponte review,

IT IS ORDERED, ADJUDGED AND DECREED that **JAMES BYERS FEELEY,** a disbarred member of the State Bar of Arizona, is hereby disbarred for conduct in violation of his duties and obligations as a

lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that Respondent shall comply with all applicable provisions of Rule 63, Rules of the Supreme Court of Arizona, and shall promptly inform this Court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED **JAMES BYERS FEELEY** shall be assessed the costs of these proceedings in the amount of $871.60.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION OF THE
SUPREME COURT OF ARIZONA

Comm. Nos. 92–0227, 92–0280, and 92–1133

In the Matter of

JAMES BYERS FEELEY,
a Disbarred Member of the
State Bar of Arizona,

RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed Feb. 12, 1994.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on December 11, 1993, for review of the record on appeal, pursuant to Rule 53(d), Ariz.R.S.Ct. The Commission considered the Hearing Officer's recommendation of disbarment. No objections to the Hearing Officer's recommendation were filed.

### Decision

By a concurrence of the eight members present,[1] the Commission adopts the recommendation of the Hearing Officer that the respondent, James Byers Feeley ("Feeley"), be disbarred. The Commission also unanimously adopts the findings of fact and conclusions of law of the Hearing Officer.

---

1. Commissioner Greer did not participate in these proceedings.

## Facts

The complaint contains three counts alleging misconduct by Feeley, and a fourth count alleging prior discipline. Counts One and Two concern Feeley's representation of Mr. and Mrs. A in their bankruptcy. After being appointed by the court to represent them in April 1991, Feeley filed an application for appointment of attorney which stated that he had received no attorney's fees. In fact, Mr. and Mrs. A had paid Feeley $6,000.

Thereafter, without obtaining the required prior approval from the bankruptcy court, Feeley solicited and obtained an additional $18,508 from his clients.

In August 1991 Feeley was suspended from the practice of law. After his suspension, he failed to notify his clients of his suspension and his inability to continue representing them in their Chapter 11 bankruptcy proceeding, as required by Rule 63, Ariz. R.S.Ct. As a result of Feeley's failure to notify his clients, they had no representation at a hearing held on a motion to dismiss. That motion to dismiss had arisen as a result of action which Feeley failed to take on behalf of Mr. and Mrs. A.

In addition, while representing Mr. and Mrs. A, Feeley presented two contradictory and inconsistent positions to the bankruptcy court. In his response in opposition to a Motion for Relief from Stay filed by a creditor in the bankruptcy proceeding, Feeley stated that property sold by the creditor to the clients had increased in value from the purchase price of $295,000 to $576,000. Feeley stated that the creditor was not entitled to relief from the automatic stay because of the substantial equity in the property. Feeley then filed a response in opposition to a Motion for Summary Judgment alleging that that same property was not worth the price the creditor had charged the clients, and that the clients had been defrauded by him. Mr. and Mrs. A did not authorize these contradictory positions taken by Feeley.

During the pendency of the bankruptcy, Feeley continuously made demands for payment from his clients, and actually received approximately $30,000 from them. Despite the fact that the Bankruptcy Code requires that any post-petition money received by the representing attorney be approved in advance by the bankruptcy court, Feeley failed to obtain court approval for receipt of this money. In addition, Feeley received a portion of this money after being placed on suspension from the practice of law.

As a result of Feeley's mishandling of the bankruptcy proceedings, the creditor was delayed in regaining control of his collateral, and Mr. and Mrs. A were compelled to convert their Chapter 11 bankruptcy to a Chapter 7 bankruptcy proceeding.

Count Three concerns Feeley's involvement in the preparation of a purchase agreement between Interconnect Industries, Inc. and Salmi Enterprises, Ltd. When the purchase agreement was executed, Hugh Ray, who handled the day-to-day operations of an investment company, Fillanks Investment, Ltd., arranged for Fillanks to financially assist Interconnect with the purchase of Salmi. The original plan was for Fillanks to loan the sum of $100,000 to Interconnect. That plan was expanded to include additional loans of $100,000 and $155,000.

Fillanks made the two payments of $100,000 to Interconnect, and paid the $155,000 to Hugh Ray to complete the purchase of Salmi. Thereafter, however, the initial plan to secure those loans fell apart, and Hugh Ray retained Feeley on behalf of Fillanks to recover the $200,000 it had paid to Interconnect.[2] Feeley agreed to represent Fillanks in the lawsuit against Interconnect despite the conflict that existed by virtue of Feeley's earlier involvement in the preparation of the initial purchase agreement between Interconnect and Salmi. Judge Pamela Franks subsequently issued an order disqualifying Feeley from further involvement in the lawsuit due to the conflict of interest.

Prior to his disqualification from involvement in the lawsuit, virtually all communications Feeley had in connection with the lawsuit were with Hugh Ray rather than with Fillanks' principal and president (the "Principal"). One result of this was that, without

---

2. Hugh Ray returned the $155,000 that had not yet been delivered to Interconnect.

notice to Fillanks or the Principal, Feeley rejected Interconnect's offer to secure the $200,000 in loans by personal guarantees and other security agreements. As a result, Interconnect has contended it now has no obligation to repay the debt because of the activities of Feeley and Hugh Ray. Further, Interconnect's financial position may now be insufficient to satisfy any judgment that might be entered against it in the pending lawsuit. Had the security agreements been signed when the offer was made, the position of Fillanks in the lawsuit would be much more favorable at this point.

Feeley made other errors in his handling of this matter, as well. Feeley withdrew money from his trust account to pay himself attorney's fees, despite the fact that the money had been deposited there for specific investment purposes. These withdrawals for the payment of attorney's fees, totalling $37,-180.67, were made without the benefit of a written fee agreement with Fillanks and without its knowledge.

Feeley improperly handled the formation of a corporation, N & H Properties, Inc., which was formed by Fillanks and Hugh Ray for the purpose of purchasing an apartment complex. Feeley allowed a relative who worked in his office to serve as the sole incorporator of N & H Properties. Feeley had Hugh Ray, who was a convicted felon, file and publish the articles of incorporation. In addition, Feeley issued no stock to Fillanks, and transmitted nothing to it in writing to confirm its ownership interest in N & H Properties or the apartment complex.

In July 1991, Feeley and Hugh Ray placed N & H Properties in bankruptcy without the knowledge or consent of Fillanks or the Principal, who was in Europe. During the course of the bankruptcy proceedings, bankruptcy schedules were prepared that clearly indicated that Hugh Ray was "stripping" the cash flow from the apartment complex and transferring those funds to an entity in which

Hugh Ray was the sole principal. Feeley took no action on this development.

There was no communication between Feeley and Fillanks or the Principal concerning either the bankruptcy or the fact that monies were being diverted by Hugh Ray. Later bankruptcy proceedings disclosed that Hugh Ray had actually "loaned" over $100,000 from the rental payments generated by the apartments directly to a corporation in which he was the sole principal. Those proceedings also divulged that only one mortgage payment had been made on the apartment complex between February and October 1991. Feeley should have recognized the damage Hugh Ray was doing to N & H Properties.

Prior to his suspension in August 1991, Feeley spoke several times with an attorney who was then representing Fillanks and the Principal, and promised to provide him with an accounting of the funds that had been placed in Feeley's trust account by Fillanks and of disbursements made from those funds. Feeley never provided such an accounting.

Finally, Feeley failed to respond to the letters sent by the State Bar concerning the charges in all three counts. The State Bar learned that Feeley had failed to advise the State Bar Membership Records department of his current address, as required by Rule 31(c)(3), when all the letters were returned, marked "Forwarding Order Expired."

### *Procedural History*

Feeley has not participated in the disciplinary process. The State Bar's attempts to personally serve the complaint were unsuccessful, as Feeley no longer resides at his address of record, as indicated above. Therefore, the complaint was served upon the clerk of the Supreme Court.[3] As Feeley failed to respond, the complaint was deemed

**3.** Prior to June 1, 1993, Rule 55(b)(6) provided that the Clerk of the Supreme Court be the designated agent for service of all filings as to a respondent who cannot be found and personally served in this state. As of June 1, 1993, that rule provides that the Disciplinary Clerk is the designated agent for service.

All documents were sent by certified mail to the respondent's address of record, and all docu-

admitted.[4] All subsequent relevant pleadings were served in the same manner. Feeley was notified of his right to be heard in mitigation and failed to respond. Feeley was notified of the opportunity to object to the Hearing Officer's report and to file a statement on review before the Commission. Feeley did not object to the Hearing Officer's report, did not file a statement on review, and did not request oral argument before the Commission.

### Discussion of Decision

The Hearing Officer found that Feeley's actions violated ER 1.1, ER 1.3, ER 1.4, ER 1.5, ER 1.7, ER 1.9, ER 1.15, ER 3.3, ER 3.4(c), ER 5.5, ER 8.4, and Supreme Court Rules 31(c)(3), 44, 51(e), (f), (h), (i), and 63. The Commission agrees.

The American Bar Association's *Standards for Imposing Lawyer Sanctions* are used by the Court in considering the appropriate sanction for a violation of the Rules of Professional Conduct. *In re Ockrassa*, 165 Ariz. 576, 799 P.2d 1350 (1990). The Commission generally uses those same guidelines, as well.

In this matter, however, the ethical violations are so numerous that virtually all of the Standards apply, making an extensive review superfluous. In connection with his clients' bankruptcy proceeding, Feeley demanded and received approximately $30,000 in fees from clients without court approval, misrepresented to the court that he had received no fees prior to the bankruptcy proceedings, failed to notify his clients of his inability to represent them after he was suspended from the practice of law, presented contradictory and inconsistent positions to the court, made statements to the court which were not authorized by his clients, and generally mishandled the clients' bankruptcy to the extent that they were compelled to convert the bankruptcy from a Chapter 11 to a Chapter 7 proceeding. In addition, Feeley represented one client in a lawsuit against a former client, rejected an offer made by a debtor which would have secured a loan which the debtor may now be unable to pay, withdrew money from his trust account for his own attorney's fees without the client's knowledge or consent, allowed a convicted felon to participate in the formation of a corporation, filed a petition in bankruptcy without the knowledge and consent of all the partners to the bankruptcy, and failed to recognize and/or alert anyone that a partner in the corporation was using corporation monies for his own benefit. The Commission believes this rampant disregard for his clients and the legal system warrants disbarment.

Standards 9.22 and 9.32 list factors to be considered in aggravation and mitigation, respectively. These factors assist in considering whether an increase or reduction in a sanction is appropriate. No mitigating factors were found, but many aggravating factors are present. Feeley was previously informally reprimanded, suspended for six months, and, just prior to the hearing before the Commission, disbarred. He had a dishonest or selfish motive in these matters, he has exhibited a pattern of misconduct with the multiple offenses found, he has shown a bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and he has substantial experience in the practice of law.

The Commission agrees with the Hearing Officer that Feeley should not be practicing law. The potential serious harm to his clients is obvious. Disbarment is the only appropriate sanction for such widespread misconduct, and the Commission so recommends.

RESPECTFULLY SUBMITTED this 12th day of February, 1994.

/s/ Steven L. Bossé
Steven L. .Bossé, Chairman
Disciplinary Commission

---

ments were returned by the post office marked "Forwarding Order Expired."

4. Rule 53(c)(1) provides that a respondent shall file an answer to the complaint within twenty days after service, or longer if extended by the committee. If a respondent does not respond within the prescribed time, the complaint shall be deemed admitted.