893 P.2d 1284

**In the Matter of a Member of the State Bar of Arizona, Clarence D. OWENS, Jr., Respondent.**

**No. SB–94–0023–D.**
**Disc. Comm. Nos. 90–1512, 90–1942.**

Supreme Court of Arizona,
En Banc.

April 13, 1995.

Diana Weinert–Landrith, Scottsdale, for Clarence D. Owens, Jr.

State Bar of Arizona by Nancy A. Greenlee, Phoenix.

## OPINION

MARTONE, Justice.

This is a lawyer disciplinary proceeding. The Hearing Committee recommended that Clarence D. Owens, Jr. be disbarred. The Disciplinary Commission recommended that he be suspended for ninety days. The Bar appealed, and Owens cross-appealed. We have jurisdiction under Rule 53(e), Ariz. R.Sup.Ct.

## I. BACKGROUND

Owens represented Karen Pontillo, who owed him $5,400 in fees as a result of that representation. Before that matter had concluded, and before paying Owens, Pontillo filed for Chapter 7 bankruptcy. Owens and his firm handled the bankruptcy even though the firm was Pontillo's creditor. Owens claimed that he advised Pontillo of the conflict, but there is no written evidence to support his claim. It is undisputed that Pontillo is an unsophisticated consumer of legal services.

Owens testified as follows: Pontillo pleaded with him to handle her bankruptcy, but she wanted to pay off her debt to him. He advised her to get another lawyer. She refused. He then advised her to properly list (and thus discharge) the debt on the bankruptcy petition. She refused. He also told her that if she really wanted to pay him off,

she should sign a reaffirmation agreement.[1] He discussed the matter with the firm's bankruptcy expert, Randy Nussbaum. Nussbaum signed and filed the bankruptcy petition.

Pontillo and Nussbaum contradicted Owens's testimony. Pontillo testified that Owens told her the debt could not be discharged and that only he could handle the bankruptcy. Nussbaum said that Owens never discussed Pontillo's refusal to list the debt with him.

Owens had Pontillo fill out a draft bankruptcy petition, which would be used to complete a final, typed version. Item 15(c) of the petition asked if the petitioner had "agreed to pay any money ... to an attorney" within the previous year and for the particulars of any agreement. Pontillo's original response on the draft petition was "none." Owens crossed that out and listed her debt to him along with fees for the bankruptcy representation. He claimed that this was a reaffirmation agreement and that Pontillo knew of and agreed to the change. Pontillo claimed that she was unaware her original response had been changed. On the final version of the petition, which was typed by Nussbaum's secretary, the reference to the debt had been deleted.[2] Nobody could explain how this had happened.

Pontillo's debts were discharged in bankruptcy in September 1986. She made small monthly payments to Owens until April 1990. Owens's firm brought an action against her seeking $5,421.53 in September 1990. Owens claims that the action did not include pre-petition fees. Pontillo obtained a new lawyer who filed a counterclaim for malpractice. The case settled in March 1991. Both the claim and counterclaim were dismissed.

Pontillo's new lawyer filed a bar complaint against Owens. The Bar charged Owens with three counts of professional misconduct. Counts two and three involved another matter, were dismissed by the Hearing Committee for lack of evidence, and are not at issue here. Count one alleged that Owens en-gaged in a conflict of interest and in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of ER 1.7(b) and ER 8.4(c), Rules of Professional Conduct, Rule 42, Ariz.R.Sup.Ct.

The Committee heard evidence in April 1993. A majority concluded that Owens not only violated ER 1.7(b) and ER 8.4(c), but also ER 1.4(b), ER 1.8(a), ER 3.1, and ER 8.1, even though violations of these four rules had not been alleged in the complaint. Two Committee members recommended disbarment. The other recommended a suspension of six months and a day.

The Commission unanimously rejected the Committee's conclusions of law and only found a violation of ER 1.7(b). A majority found that the Bar did not prove violations of ER 8.1 (which was uncharged) and ER 8.4(c) by clear and convincing evidence. The Commission did not consider the violations of ER 1.4(b), ER 1.8(a), and ER 3.1 because the complaint had never been amended. A majority recommended a ninety day suspension. A dissenting member recommended censure or an informal reprimand.

The Bar claims that: (1) the Committee properly found violations of ER 1.4(b), ER 1.8(a), and ER 3.1; (2) the violations of ER 8.1 and ER 8.4(c) were supported by clear and convincing evidence; and (3) disbarment is a proper sanction.

Owens argues that: (1) the Committee should not have found violations of uncharged ERs; (2) the violations of ER 8.1 and ER 8.4(c) were not proved by clear and convincing evidence; and (3) no sanctions are warranted. Owens argues on cross-appeal that: (1) the Commission erred in finding a violation of ER 1.7(b) and should not have accepted the Committee's findings on that issue; and (2) he is entitled to his costs and attorney's fees.

## II. ANALYSIS

A. *Finding Violations of Uncharged Ethical Rules*

■ The Committee found violations of four ethical rules that were never charged.

---

1. The Bankruptcy Code allows a debtor to reaffirm debts in certain circumstances. 11 U.S.C. § 524(c) (1993).

2. The final petition suggests that reference to the debt was originally included, but had been whited out before filing.

The Bar can amend a complaint to include new charges, either before or during the hearing. Rule 55(a), Ariz.R.Sup.Ct.[3] Both the rule and procedural due process require that a respondent be given reasonable time and an appropriate opportunity to respond to amended charges. *Id.; In re Myers,* 164 Ariz. 558, 561–62, 795 P.2d 201, 204–05 (1990).

The Bar says that it did not include certain allegations in the original complaint because the misconduct "only came to light during respondent's testimony at the hearing." State Bar's Opening Br. at 14. But the complaint was never amended. Bar counsel first discussed the uncharged allegations in closing argument before the Committee. Owens did not have a reasonable opportunity to respond. This case is a lot like *Myers,* in which we said that "[r]espondent may not be charged with one violation and then, without opportunity for hearing or presentation of evidence, be disciplined for another." *Myers,* 164 Ariz. at 561–62, 795 P.2d at 204–05. Owens had no such opportunity here. The presentation of evidence in the three day hearing had concluded and closing arguments were underway. The Bar could have sought leave to amend the complaint and given Owens a reasonable opportunity to respond to the amended allegations. It did not. The Commission correctly declined to find violations of ERs 1.4(b), 1.8(a), and 3.1.

Although uncharged, the Commission considered the merits of whether Owens violated ER 8.1, which provides in part that a lawyer shall not "knowingly make a false statement of material fact" in connection with a disciplinary matter. The Commission concluded that an amendment was unnecessary because a violation of ER 8.1 could not be pled in the initial complaint. But even though the violation occurred during the hearing, the Bar could have sought leave to amend. Rule 55(a) required the Committee to give Owens a reasonable opportunity to respond.

The Bar argues that Rule 54(i), Ariz. R.Sup.Ct., allowed the Committee to find that Owens violated uncharged ethical rules. Rule 54(i) states that no findings shall be invalidated because of an error in pleading or procedure, unless the error will result in a miscarriage of justice. But the failure to give a lawyer notice and an opportunity to be heard on charges of unethical conduct is not mere pleading error. We agree with Owens that the Committee should not have found violations of uncharged ethical rules.

## B. *ER 8.4(c)*

■ ER 8.4(c) makes it "professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Committee gave alternative justifications to support its finding that Owens violated ER 8.4(c). If Owens believed the draft bankruptcy petition was a reaffirmation agreement, he violated ER 8.4(c) by not fully advising Pontillo of that fact. If he did not believe the petition was a reaffirmation, he violated ER 8.4(c) by his later representations to Pontillo that the debt had not been discharged.

The Commission did not find sufficient evidence that Owens violated ER 8.4(c), but did find "significant inconsistencies between Owens's testimony and that of the other witnesses." Comm'n Rep. at 6. Based in part on this contradictory testimony, the Commission concluded "that the State Bar did not prove by clear and convincing evidence that Owens made misrepresentations or acted with dishonesty. While Owens's conduct may well have been negligent, the majority does not believe the State Bar proved by clear and convincing evidence that it was dishonest behavior." *Id.*

The Bar argues that the Commission impermissibly ignored the Committee's credibility determinations. The Committee found that Pontillo's testimony was credible and Owens's was not. The Bar suggests that to believe Pontillo and not Owens requires a finding that Owens violated ER 8.4(c).

We agree with the Commission that a violation of ER 8.4(c) was not proved by clear

---

**3.** Rule 55(a) provides that the complaint may be amended "to include further charges, whether occurring before or after the commencement of the disciplinary hearing. If an amendment to the complaint is made, respondent shall be given reasonable time to answer the amendment, to provide evidence and to respond to the charges."

and convincing evidence. Owens believed the draft bankruptcy petition was a reaffirmation agreement. He represented to Pontillo that it was a reaffirmation agreement. He did not fully discuss the ramifications of such an agreement with Pontillo, but that goes to whether Owens fully consulted with Pontillo within the meaning of ER 1.7(b).

Contrary to Owens's opinion, we do not think that the draft petition was a reaffirmation agreement. *See* 11 U.S.C. § 524(c) (1993). But misunderstanding the law need not always lead to a violation of ER 8.4(c). Negligently giving incorrect legal advice may be malpractice, but ER 8.4(c) requires dishonesty, fraud, deceit or misrepresentation, not just negligence. *See In re Stewart*, 121 Ariz. 243, 248, 589 P.2d 886, 891 (1979) (respondent argued that he had merely been negligent; we found knowing misrepresentation in violation of DR 1-201(A)(4)); American Bar Association, *Standards for Imposing Lawyer Sanctions*, Standard 5.13 (1991) (reprimand appropriate when lawyer knowingly engages in dishonesty, fraud, deceit or misrepresentation; no provision for sanctions with lesser mental state). Owens may have been negligent, but we cannot say that the Bar proved by clear and convincing evidence that he engaged in misrepresentation.

The Bar also claims that Owens violated ER 8.4(c) by telling Pontillo that she could not get another lawyer to handle her bankruptcy and that she could not list the debt on her bankruptcy petition. Neither the Committee nor the Commission found a violation of ER 8.4(c) based on this alleged conduct. We decline to do so here.

## C. *ER 1.7(b)*

■ ER 1.7(b) forbids a lawyer from representing a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." The Committee found

that Owens did not properly advise Pontillo of the nature of the "reaffirmation agreement" or that the debt would be discharged without listing it in the bankruptcy petition. The Commission found that representing Pontillo on both the dissolution and bankruptcy, "without informing her in writing of the potential conflict of interest presented, was a violation of ER 1.7(b)." Comm'n Rep. at 5.

Owens argues that the Commission improperly required written notice of a potential conflict of interest. He also claims that Pontillo consented to the representation after consultation. The Bar agrees that no writing is required, but argues that Owens did not properly "consult" with Pontillo within the meaning of ER 1.7(b).

Owens is correct that ER 1.7(b) does not require that a client be informed of a conflict of interest in writing. While a writing might have supported Owens's position, we will not find a violation merely because there was no writing.

We must first decide whether Owens's representation of Pontillo was "materially limited" by his own interests. It clearly was. Owens, as a creditor, wanted to be paid. But as Pontillo's lawyer, he should have advised her to discharge her debt to him.

An interested lawyer may still represent a client when the client consents after consultation.[4] Owens claims that Pontillo refused to list the debt on the bankruptcy petition and that he told her it could be discharged. He also claims that the draft petition was a valid reaffirmation agreement. But there are guidelines that must be followed to establish a valid reaffirmation. 11 U.S.C. § 524(c) (1993). The agreement must contain a clear and conspicuous statement advising the debtor that the agreement may be rescinded before discharge and a declaration by the debtor's lawyer that the agreement does not impose an undue hardship on the debtor. 11 U.S.C. § 524(c)(2), (c)(3)(B) (1993). Owens did not satisfy these requirements. Nor could he have declared that reaffirmation

---

4. The lawyer must also reasonably believe that the representation will not be adversely affected,

an issue we need not reach.

would not have imposed an undue hardship—the debt was greater than Pontillo's annual income.[5]

To consent after consultation, Pontillo needed to have understood the ramifications of a reaffirmation agreement and her rights under it. The failure to fully consult with the client on the nature of a reaffirmation agreement, as required by .the Bankruptcy Code, precludes a client from consenting to representation by an interested lawyer. *See In re Symes*, 174 B.R. 114, 117 (Bankr. D.Ariz.1994) (when lawyer is creditor, and given "the special attorney-client relationship," reaffirmation agreement requires "detailed notice and disclosure" and that client be told in plain, conspicuous, written terms that debt is dischargeable). Because ·he failed to properly consult with Pontillo, Owens violated ER 1.7(b).

D. *Owens's Claim to Costs and Attorney's Fees*

■ Rule 52(a)(8), Ariz.R.Sup.Ct., requires that costs and expenses be assessed against a sanctioned lawyer. The rule does not allow a lawyer to recover his costs and fees, but Owens claims that it should. He argues that the rule must be "construed in accordance with the doctrine of mutuality of remedy" and that to refuse to so read the rule is a violation of equal protection. Respondent's Answering Br. at 15. He cites no authority to support this position. We have no occasion to reach this issue, because under no reading of our rule could a sanctioned lawyer recover his costs and fees. Owens is being sanctioned here.

E. *Sanction*

In deciding the appropriate sanction, we consider the recommendation of the Bar. *In*

*re Hiser*, 168 Ariz. 359, 362, 813 P.2d 724, 727 (1991). We also give great weight to the recommendations of the Committee and the Commission, though we must ultimately decide the appropriate sanction. *In re Lincoln*, 165 Ariz. 233, 235, 798 P.2d 371, 373 (1990).

■ We impose sanctions to protect the public, not to punish lawyers. *Hiser*, 168 Ariz. at 362–63, 813 P.2d at 727–28. When imposing sanctions, we may consider: (a) the duty violated, (b) the lawyer's mental state, (c) the potential or actual injury caused by the misconduct, and (d) aggravating and mitigating circumstances. *Id.* We also look to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991).

1. *Recommendations*

■ The Bar asked the Committee to suspend Owens for up to six months. The Committee recommended disbarment. On review to the Commission, the Bar asked for disbarment in its brief, and for a sanction "somewhere in·between" a six-month suspension and disbarment at oral argument. Tr., Nov. 13, 1993, at 17. The Commission recommended a ninety-day suspension. On appeal to this court, the Bar asked for disbarment, calling it "the only sanction that will serve the purposes for which discipline is imposed."[6] State Bar's Opening Br. at 19.

Only the Commission based its recommendation on the same ethical violation we find—ER 1.7(b). We therefore give weight to its recommendation, but decide for ourselves the appropriate sanction.

Owens violated ER 1.7(b). ABA Standard 4.32 recommends suspension when a lawyer knows of a conflict, does not fully disclose its effect, and causes injury or potential injury to the client. ABA Standard 4.33 recom-

---

5. One bankruptcy court recently ruled that a creditor/lawyer should not be allowed to assert that a reaffirmation agreement will not harm the debtor. *In re Perez*, 177 B.R. 319, 322 (Bankr. D.Neb.1995). Such a prohibition would require the bankruptcy court to decide whether the agreement created an undue hardship on the debtor and whether it was in the debtor's best interests. *Id.;* See 11 U.S.C. § 524(c)(6)(A) (1993).

6. While bar counsel is not a prosecuting attorney, the comment to ER 3.8, on the special duties of a prosecuting attorney, is helpful. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." The Bar went from asking the Committee (at closing arguments) for up to a six-month sanction to claiming here that disbarment is the only appropriate sanction. While advocacy alone does not aid us in deciding the appropriate sanction, the Bar's objective appraisal could be very helpful.

mends reprimand or censure when a lawyer is negligent in deciding whether representation will be affected by the lawyer's interests and causes injury or potential injury to the client. Owens's conduct potentially fits into either Standard. We base our choice on our weighing of aggravating and mitigating circumstances and, to the extent practicable, whether the sanction is proportional to other similarly situated lawyers.

### 2. *Aggravating and mitigating circumstances*

The Commission found as aggravating Owens's refusal to acknowledge the wrongful nature of his conduct and the vulnerability of his client. It declined to find that Owens's substantial experience in law practice was an aggravating circumstance, and instead found that his discipline-free, forty-four year law practice was a substantial mitigating circumstance.

We agree that Owens's refusal to appreciate the wrongfulness of his actions and the vulnerability of the client are aggravating circumstances. But we also agree that his long law practice with a spotless disciplinary record is a very substantial mitigating factor.

### 3. *Proportionality*

In deciding upon an appropriate sanction, we sometimes review those imposed in similar cases. *In re Pappas,* 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988). This is an imperfect process because no two cases are ever alike.

The Commission based its recommendation of a ninety-day suspension, in part, on *In re Ockrassa,* 165 Ariz. 576, 799 P.2d 1350 (1990). Ockrassa prosecuted a client whom he had previously defended, even after the client asked him to withdraw. In so doing, he engaged in a conflict of interest with a former client in violation of ER 1.9. He had been disciplined before, and there was no substantial mitigation. We chose to suspend him for ninety days because "respondent has demonstrated an insensitivity to conflicts of interest evidenced by a pattern of misconduct." *Id.* at 580, 799 P.2d at 1354.

In *In re Miranda,* 170 Ariz. 270, 823 P.2d 1278 (1992), a lawyer violated ER 1.8(a) by entering into a business transaction with a client without obtaining written consent. He also intentionally failed to respond to the Bar's requests for information and intentionally failed to comply with the terms of probation. We suspended Miranda for three months, followed by a two year term of probation.

### 4. *Conclusion*

We do not think that Owens's conduct rises to the level of either Miranda's or Ockrassa's. He has no history of misconduct, and has not simultaneously violated several ethical rules. Most importantly, there is very substantial mitigation here. Forty-four years of blemish-free law practice ought to and does count for much. Proportionality suggests that censure is appropriate.

### III. DISPOSITION

Respondent is censured. He is assessed fees and costs as may be taxed and allowed.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET, J., concur.

CORCORAN, Justice, dissenting.

The facts in this case as found by both the Hearing Committee and the Disciplinary Commission argue for a period of suspension for respondent. The 90–day suspension recommended by the Commission is appropriate. *See In re Ockrassa,* 165 Ariz. 576, 799 P.2d 1350 (1990); *In re Shannon,* 179 Ariz. 52, 876 P.2d 548 (1994).